**Greg SCHER, Appellant,**

**v.**

**James PURKETT, Kim Williford, Rick Jones, Dennis Mayberry, et al., Respondents.**

**No. WD 45663.**

Missouri Court of Appeals, Western District.

June 30, 1992.

Greg Scher, pro se.

William L. Webster, Atty. Gen., Stewart M. Freilich, Asst. Atty. Gen., Jefferson City, for respondents.

Before HANNA, P.J., and FENNER and ULRICH, JJ.

PER CURIAM:

Greg Scher, an inmate in the Farmington Correctional Center, instituted against various prison officials an action for the negligent loss of a gold necklace. The trial court allowed Mr. Scher to file his petition as a poor person and to conduct discovery. However, the petition was ultimately dismissed for failure to state a cause of action because of the applicability of the official immunity doctrine. Mr. Scher now appeals.

The judgment of dismissal is affirmed.

According to the allegations in the petition, in early 1990, central transportation officer Dennis Mayberry prepared to escort Mr. Scher to a federal court hearing in St. Louis. After conducting a security check, officer Mayberry took from Mr. Scher an 18k gold necklace. The officer then placed the necklace in his suit pocket, but never returned it. Mr. Scher further alleged that his efforts to secure replacement of or restitution for the lost necklace through the prison grievance procedure were unavailing. He attributed the unfavorable result of the grievance proceedings to the remaining defendants, consisting of prison superintendent James Purkett, grievance officer Kim Williford, and functional unit manager Rick Jones. Mr. Scher asserted that, as a direct result of defendant Mayberry's negligence and the actions, inactions, and policies of the remaining defendants, he was deprived of valuable property. In his prayer for relief, Mr. Scher sought $258 as the value of the necklace, consequential damages, interest, punitive damages, and declaratory relief.

Mr. Scher claims abuse of discretion in dismissing his petition for failure to state a cause of action. In support, he emphasizes that, in reviewing the dismissal, this court must accept properly-pleaded facts as true, must accord allegations their broadest possible meaning, and must construe pleadings in the light most favorable to him. Mr. Scher also presents arguments on the inapplicability of collateral estoppel and res judicata, matters which are not germane to this appeal. The respondent prison officials insist upon their immunity from suit under the official immunity and public duty doctrines.

Involving related concepts, the official immunity doctrine and the public duty doctrine may shield from tort liability public officers and employees acting within the

scope of their authority. *Norton v. Smith,* 782 S.W.2d 775, 777 (Mo.App.1989). Not matters of affirmative defense, these doctrines serve to delineate the legal duty which the defendant official owes to the plaintiff. *Green v. Denison,* 738 S.W.2d 861, 865 (Mo. banc 1987).

■■■ The official immunity doctrine exempts public officers from liability for injuries arising from their discretionary acts or omissions, but imposes liability for torts committed while acting in a ministerial capacity. *Kanagawa v. State By and Through Freeman,* 685 S.W.2d 831, 835 (Mo. banc 1985). Discretionary acts involve the exercise of reason in developing a means to an end, and discretion in determining how or whether an act should be done or a course pursued. *Id.* at 836. In contrast, ministerial functions concern clerical duties to be performed upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to the public officer's own judgment or opinion on the propriety of the act. *Id.* The official immunity doctrine serves society's compelling interest in vigorous and effective administration of public affairs by protecting public officers from fear of personal liability as they make judgments concerning the public safety and welfare. *Green,* 738 S.W.2d at 865; *Kanagawa,* 685 S.W.2d at 836.

■■ The public duty doctrine holds that public officers are not liable in tort for injuries or damages sustained by particular individuals that result from a breach of the duty that the officers owe to the general public. *Beaver v. Gosney,* 825 S.W.2d 870, 873 (Mo.App.1992). The rationale for this policy is to provide protection for modestly compensated public employees against multifarious claims and to allow the employees to perform their tasks without inappropriate distractions. *Id.*

■■ To be liable for official acts, a public official or employee must breach a ministerial duty imposed by statute or by regulation. *Norton,* 782 S.W.2d at 777. In 1989, the general assembly revised the statutory framework for management of inmates'

personal property. Section 217.200, RSMo 1986 (repealed 1989), provided as follows:

**Personal property of inmates to be held—records to be kept—returned, when, exception.**

1. The chief administrative officer of each institution, or his designee, shall take charge of all money and other articles of value which may be brought to an institution by any inmate or come into his possession in a manner consistent with law or with regulations of the division or institution.
2. Such money or articles shall be returned to the inmate legally entitled to them when he is discharged or demands them for purposes consistent with law and regulations, except for any money confiscated as contraband pursuant to section 217.365.
3. The chief administrative officer shall keep records of receipts and disbursements for such money and articles.

In place of the repealed statute, the legislature enacted § 217.197, RSMo Supp.1991:

**Offender personal property, allowed when—unauthorized property, disposition of.**

1. The amount and type of the personal property an offender housed in a department facility may possess shall be established by policy. Control and disposition of offender property as related to value and volume shall be set by policy.
2. Unauthorized personal property found in the possession of offender housed in a department facility may be impounded and disposed of per policy directives.

■■■ The revisions reflect shifts in legislative intent with regard to prison official's control and disposition of inmates' personal property. Under § 217.200 (repealed), the taking charge of inmates' property was drafted in mandatory language, rendering such acts "ministerial," thus, outside the realm of official immunity. *Nitcher v. Thompson,* 777 S.W.2d 626, 628 (Mo.App.1989). In contrast, the provisions of § 217.197 relegate the management of prisoners' property to institutional policy. Policy-making entails developing a means

to an end, and necessarily involves discretionary functions clearly within the scope of official immunity. *See Kanagawa*, 685 S.W.2d at 836–37. In addition, § 217.200.2 (repealed) was construed to provide legal recourse to prisoners who claimed entitlement to the return or replacement of property withheld by prison authorities. *Nitcher*, 777 S.W.2d at 628; *Howard v. Pettus*, 745 S.W.2d 821, 822 (Mo.App.1988); *Herron v. Wyrick*, 686 S.W.2d 56, 57 (Mo.App. 1985). By omitting any reference to the return of inmates' property, the new provisions of § 217.197 significantly commit the matter to the wisdom of institutional policy.

■ In his petition, Mr. Scher alleged that a transportation officer took from him a gold necklace during a security check, and failed to return it. Mr. Scher also averred that members of the prison grievance task force failed to compensate him for the lost necklace. Even when accepted as true and broadly construed, the factual allegations in Mr. Scher's petition identified no ministerial duty owed him individually that is mandated by statute, regulation, or policy. *Compare Norton*, 782 S.W.2d at 778 (which upheld summary disposition of negligence action brought by police officer, shot by parolee, against parole officer). The respondent prison officials who participated in the grievance proceedings engaged in discretionary functions. *Cf. Shivers v. Barnes*, 813 S.W.2d 121, 123 (Mo. App.1991) (prison classification team exercised a discretionary function in recommending disposal of an inmate's property as a disciplinary sanction); *Callahan v. Marsh*, 717 S.W.2d 260, 261 (Mo.App.1986) (prison employee's filing a conduct violation report against a prisoner constituted a discretionary action). Although the transportation officer may have performed ministerial duties in conducting the security check, such duties are owed to the general public, not to Mr. Scher in his individual capacity. Inmate property policy, § 20–1420.010(7), specifies, "All Farmington Correctional Center employees will ensure that reasonable procedures are followed to prevent the loss of an inmate's property." The policy provides specific guidelines for handling inmates' property in enumerated situations but establishes no guidelines when a prisoner is escorted from the institution for a court appearance. The directive to follow "reasonable procedures" to prevent property loss entails the exercise of judgment in determining how or whether an act should be done, and imposes a discretionary duty.

Mr. Scher's claims for the negligent loss of his necklace, as set forth in his petition, were barred by the official immunity and public duty doctrines. The judgment of dismissal is accordingly affirmed.