**Arthur CLAY, Appellant,**

v.

**Helen SCOTT, et al., Respondents.**

No. 65029.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 20, 1994.

Arthur Clay, pro se.

Jeremiah W. (Jay) Nixon, Atty. Gen., John J. Treu, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

Arthur Clay (Clay), an inmate at Farmington Correction Center, filed a pro se suit for damages against three employees at Farmington Correction Center: Helen Scott,

Functional Unit Manager; Sharon Fairchild, Assistant Superintendent; and Jack Bare, Inmate Property Officer. Clay contends the trial court erred in dismissing his petition because the above named employees (employees) failed to perform "ministerial duties," thus, the doctrines of official immunity and public duty should not apply. We affirm.

We accept the allegations in the petition as true. Clay alleged on August 28, 1992, he asked permission to purchase a winter coat. Scott, the Functional Unit Manager at the Correction facility, directed him to follow the inmate property policy. Clay submitted a "green check" to Scott who signed it, approving a $89.95 order for a winter coat and liner. That same day, Fairchild, the Assistant Superintendent at the Correction institution, also approved the order.

Two months later the Farmington Correction Mailroom received a package containing clothing. Pursuant to the inmate property policy, Bare, the Inmate Property Officer, inspected the package for contraband. He determined Clay could take possession of the clothing. Clay received an extra large black field jacket and an extra large green liner. However, he returned the jacket and liner because they were too large and requested a smaller size.

About one month thereafter, the Farmington Correction Center Mailroom received a package containing a smaller coat and liner. Again, Bare inspected the package for contraband and determined Clay was allowed to have the clothing. Clay received a large black field jacket and a large black liner. He used the jacket and liner from November 10, 1992 until June 12, 1993.

On June 12, 1993, a Correction officer, not a party to this proceeding, confiscated the jacket and liner because they were similar to the uniforms worn by the Farmington Correction Center guards. The Farmington Correction Center Administration determined the jacket and liner endangered institutional security. They found the coat was unauthorized inmate property and ordered Clay to mail the items out of the facility or have them destroyed.

On August 30, 1993, Clay filed this civil suit against three employees. He alleges the employees were negligent because they failed to inform him the jacket and liner were unauthorized inmate property. In his petition, Clay complains of the following,

> That [he] is a naturally frugal person who is quite mentally disposed to carefully guard the spending of his monetary resources and that the experience of losing possession and utility of said field jacket and liner as stated above has brought great mental anguish upon [him] whereby he grieves daily for said loss and mistake of purchase.

In his prayer for relief, he does not seek the return of his property, but rather asks for monetary damages in the amount of $100.00 for the value of the field jacket and liner, and $10,000 for mental anguish from each of the three employees.

Defendant-employees filed a motion to dismiss Clay's petition. Clay objected to the motion to dismiss and requested a trial date. The trial court granted the motion to dismiss with prejudice on October 27, 1993.

To determine whether a petition states a cause of action, the petition must be viewed in the light favorable to the pleader, given the benefit of every reasonable intendment. *Nitcher v. Thompson,* 777 S.W.2d 626, 627 (Mo.App.1989). In reviewing a motion to dismiss for failure to state a claim, we examine the petition, allowing the petition its broadest intendment, treating all facts alleged as true, and construing the allegations favorably to determine whether they invoke principles of substantive law. *Copper v. Corderman,* 809 S.W.2d 11, 13 (Mo.App. 1991). However, the court does not have to accept the petitioner's conclusions as true. *Id.*

Clay contends the trial court erred in dismissing his petition on the basis of the official immunity and public duty doctrines because the defendant-employees acted in reckless disregard of institutional policies.

Under the official immunity and public duty doctrines, a public official must breach a ministerial duty imposed by statute or by regulation. *Scher v. Purkett,* 847

S.W.2d 76, 78 (Mo.App.W.D.1992). Defendant-employees owed no "ministerial duty" to Clay. We hold the dismissal was properly granted.

■ The official immunity doctrine shields public officers, as a matter of law, from civil liability for discretionary acts or functions performed in the exercise of official duties, but imposes liability for injuries committed when exercising ministerial functions. *Kanagawa v. State by and through Freeman*, 685 S.W.2d 831, 835 (Mo. banc 1985). The doctrine functions to relieve public officials from the fear of personal liability as they make judgments concerning public safety and welfare. *Green v. Denison*, 738 S.W.2d 861, 865 (Mo. banc 1987).

■ "Whether an act can be characterized as discretionary depends upon the degree of reason and judgment required." *Kanagawa v. State by and through Freeman*, 685 S.W.2d 831, 836 (Mo. banc 1985). A discretionary act requires the exercise of reason in developing a means to an end and the sound judgment to determine how or whether an act should be done or course pursued. *Id.* On the other hand, a ministerial function involves clerical duties which a public officer is required to perform upon a given state of facts, in a prescribed manner, in compliance of legal authority, without regard to the public officer's own judgment or opinion on the appropriateness of the act. *Id.*

■ The public duty doctrine protects public officers from civil liability for injuries or damages sustained by particular individuals resulting from a breach of a duty the officer owed to the general public. *Scher v. Purkett*, 847 S.W.2d 76, 78 (Mo.App.W.D. 1992). A breach of a public official's duty to the general public will not support a cause of action by an individual injured thereby. *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 445 (Mo. banc 1986). However, a public official is liable if the law imposes on the officer ministerial duties in which an individual has a "special, direct, and distinctive interest," and breach of such duties causes injury to the individual. *Id.*

■ Clay cites to the Inmate Property Procedure alleging defendant-employees breached their ministerial duties by being careless and unfamiliar with these institutional policies since defendant-employees allowed him to purchase the field jacket and liner and should have known such clothing was unauthorized inmate property before they authorized the purchase.

Employees at the Correction facility are required to comply with the Inmate Property Procedure with regard to inmate property management. The Inmate Property Procedure provides in part,

> e) Property Officer will go to the Mailroom and check all incoming inmate packages for contraband before entry into institution. Packages will then be checked against inmate's property list and invoice to see if inmate is allowed contents of package. . . .

The act of managing inmate property is not mechanical or clerical in nature requiring little "professional expertise" or "independent judgment," but rather is discretionary. Determining whether a package is contraband or whether an inmate is allowed the package, requires a degree of reason and judgment by the property officer, especially when no fixed guidelines are established on the question, as in the case here.

Additionally, the provisions of § 217.197 RSMo Cum.Supp.1992 relegates the management of inmates' property to institutional policy. It states,

> **Offender personal property, allowed when-unauthorized property, disposition of**
>
> 1. The amount and type of personal property an offender housed in a department facility may possess shall be established by policy. Control and disposition of offender property as related to value and volume shall be set by policy.
>
> 2. *Unauthorized personal property found in the possession of offender housed in a department facility may be impounded and disposed of per policy directives.* (Our emphasis)

"Policy-making entails developing a means to an end, and necessarily involves discretionary functions clearly within the scope of official immunity." *Scher v. Purkett*, 847 S.W.2d

76, 78–79 (Mo.App.W.D.1992). The Correction facility officials are given discretion under the above statute to decide what course of action to pursue regarding the control of an inmate's personal property. The control and disposition by a prison officer of an inmate's personal property requires discretionary acts under § 217.197 RSMo Cum. Supp.1992, therefore, defendant-employees were immune from tort liability under the official immunity and public duty doctrines.

Clay failed to state a cause of action. Assuming, without deciding, defendant-employees acted in reckless disregard of institutional policies, they owed no ministerial or "distinct duty" to Clay. The Farmington Correction Center's Administration determined the jacket and liner would jeopardize the security and safety of the correctional institution because the clothing was similar to the uniforms worn by the Farmington Correction Center guards. The defendant-employees' act of controlling unauthorized inmate property complied with a duty to the public at large, rather than to Clay or other inmates. Clay's loss of personal property was indirect and indistinct from that of the public as a whole.

Respondents' motion to dismiss is denied. We affirm.

AHRENS, P.J., and SIMON, J., concur.