Kenneth G. CHARRON, Appellant,

v.

R. THOMPSON, Correctional Officer I,
and

Dave Dormire, Assistant Superintendent,
J.C.C.C., Respondents.

No. 78783.

Supreme Court of Missouri,
En Banc.

Dec. 17, 1996.

As Modified on Denial of
Rehearing Feb. 25, 1997.

Kenneth G. Charron, Jefferson City, pro se.

Jeremiah W. (Jay) Nixon, Attorney General, Gregory L. Barnes, Assistant Attorney General, Jefferson City, for Respondents.

WHITE, Judge.

Kenneth G. Charron appeals from the dismissal of his petition against Dave Dormire, the assistant superintendent of Jefferson City Correctional Center (JCCC). The circuit court dismissed his petition because the claim was barred by the following: (1) § 516.145 RSMo 1994,[1] the one-year statute of limitations governing inmate claims; (2) the official immunity doctrine; and (3) the public duty doctrine. This Court has jurisdiction as Charron challenges the constitutionality of § 516.145. We affirm.

## I.

On October 19, 1992, Charron received by prison mail a special order that he had purchased through an approved vendor. The

---

1. All statutory references are to RSMo, 1994.

order consisted of one leather vest, one pair of leather pants, and one leather weight belt, totaling $600.00. After repackaging the items in a box addressed to his mother, Charron brought the box and some stamps to the prison law library to weigh the box and determine the necessary postage. Apparently Charron left the box in the library overnight, as the leather items and sixteen twenty-nine-cent stamps were seized in a routine sweep of the library for contraband. Thirty-three other items were seized in the sweep. Most of these items were articles of clothing lacking inmate identification numbers.

All of the seized items were brought to the prison property room. The next day an officer from the property room forwarded a complete list to the assistant superintendent and requested permission to dispose of the items. The assistant superintendent's written response was "Dispose or Donate." The property room officer shredded the leather pants, vest, and belt with a knife. He then placed the items in trash bags, sealed the bags, and disposed of the bags through the institutional trash.

After exhausting the required portion of the administrative remedies available to him, Charron filed a petition in small claims court. Judgment was entered against Dave Dormire "in his official capacity" for $600.00 and court costs. Judgment was entered in favor of Correctional Officer I (C.O.) Thompson—the officer who, according to Charron, seized the items in the library. Pursuant to § 482.365, the assistant superintendent asserted his right to trial *de novo*. The trial court dismissed Charron's petition for failure to state a claim.

In reviewing the trial court's dismissal of Charron's petition, we treat as true the facts he alleged, construe the allegations in his favor, and determine whether those allegations invoke principles of substantive law.[2]

## II.

The doctrine of official immunity shields officials from liability for injuries arising out of their discretionary acts or omissions.[3] An official may be held liable for injuries arising out of ministerial acts.[4]

Charron argues that even if the assistant superintendent's[5] actions were discretionary, they were done in bad faith, and therefore, not protected. In the alternative, Charron contends that the act was ministerial and that the assistant superintendent breached a duty to him by ordering that his property be disposed of or donated.

Whether a function is discretionary or ministerial is a case by case determination to be made after weighing "such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment."[6]

A ministerial function is one which a public officer is required to perform "upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to [an employee's] own judgment or opinion concerning the propriety of the act to be performed."[7]

Section 217.197.1 states that "[t]he amount and type of personal property an offender housed in a correctional center may possess shall be established *by policy*. Control and disposition of offender[s'] property as related to value and volume shall be set *by policy*."[8] Instead of imposing a mandatory statutory procedure to be followed by each correctional center, the legislature chose to delegate to prison officials the responsibility for making

2. *Hagely v. Board of Educ.*, 841 S.W.2d 663, 665 (Mo. banc 1992) (citing *Shapiro v. Columbia Union National Bank & Trust Co.*, 576 S.W.2d 310, 312 (Mo. banc 1978), *cert. denied*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979)).

3. *Kanagawa v. State By and Through Freeman*, 685 S.W.2d 831, 835 (Mo. banc 1985).

4. *Id.*

5. Charron has abandoned his arguments concerning C.O. Thompson.

6. *Kanagawa*, 685 S.W.2d at 836.

7. *Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984) (quoting *Jackson v. Wilson*, 581 S.W.2d 39, 43 (Mo.App.1979)).

8. (emphasis added).

decisions concerning inmate property control. These decisions are not ministerial in nature as they "necessarily involve the exercise of a substantial degree of judgment and require consideration of the manifold aspects of prison operation."[9]

It was within the assistant superintendent's discretion, as a matter of prison safety, to decide what to do with the items seized as contraband in the library. He ordered that that any appropriate items be donated to charity, and that any items the property room officer felt inappropriate for charitable use be disposed of through the institutional trash. As the assistant superintendent's actions were discretionary, they are protected under the doctrine of official immunity. To hold otherwise would undermine the purpose behind the doctrine. "[S]ociety's compelling interest in vigorous and effective administration of public affairs requires that the law protect those individuals who, in the face of imperfect information and limited resources, must daily exercise their best judgment in conducting the public's business."[10]

### III.

 Charron argues that even if we decide that the assistant superintendent's decisions were discretionary, they are not protected under the sovereign immunity doctrine because the assistant superintendent made them "maliciously, willfully, corruptly, and in bad faith." Taking all the facts that Charron pleads as true, he concedes that he left personal property in the library overnight. He alleges no facts that demonstrate that he was maliciously singled out in any way. The record shows that the assistant superintendent instructed the property room officer to dispose of or donate every item seized, not just those abandoned by Charron. In any case, the items were not marked with Charron's inmate identification number. Even accepting as true that the box in which he left the clothes was addressed to his mother, the assistant superintendent made his judgment based on the list forwarded to him from the property room, which did not list the addressed box.

Charron's conclusions are insufficient to support his allegation that the assistant superintendent's discretionary decisions were made in bad faith. The trial court properly dismissed his petition for failure to state a claim.

As we have disposed of this case on other grounds, we do not address the constitutionality of § 516.145.[11] The judgment is affirmed.

All concur.

---

9. *Kanagawa,* 685 S.W.2d at 836.

10. *Id.* (citing *Jackson,* 581 S.W.2d at 42).

11. *State v. Rector,* 328 Mo. 669, 40 S.W.2d 639, 643 (1931).