Shelby HARRIS, Appellant,

v.

Raul MUNOZ, et al., Respondent.

No. WD 58894.

Missouri Court of Appeals,
Western District.

Feb. 13, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 27, 2001.

Application to Transfer Denied
May 29, 2001.

Appellant acting pro se.

David Allen Johnston, Jefferson City, for respondent.

Before Presiding Judge SMART, Judge ELLIS and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Plaintiff–Appellant Shelby Harris appeals an order granting summary judgment in favor of Defendants–Respondents, who are prison officers working for the Missouri Department of Corrections. Mr. Harris alleges that Defendants negligently misplaced his headphones and tape player after Defendants had confiscated them and placed them in storage at the prison where Mr. Harris was incarcerated. The Circuit Court granted summary judgment in favor of Defendants pursuant to the doctrine of official immunity. Mr. Harris appeals, arguing that the official immunity doctrine does not apply because the duty he alleges Defendants breached was ministerial rather than discretionary in nature. We agree that where, as here, Mr. Harris alleges that his property was lost due to Defendants' failure to comply with mandatory procedures set out in prison regulations for the safeguarding of prisoner property, the alleged breach is of a ministerial rather than of a discretionary duty, and the official immunity doctrine does not apply.

For this reason, we reverse the trial court's grant of summary judgment to defendants and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff–Appellant Shelby Harris was an inmate in the custody of the Missouri Department of Corrections. On May 20, 1996, while housed at the Algoa Correctional Center (ACC), Mr. Harris was moved from cell 16B–001 to cell 16B–2002. On May 21, 1996, Mr. Harris reported to Grievance Officer Arnold Mantle that he had inadvertently left some personal property in a footlocker in his old cell. When Mr. Harris opened the locker in Mr. Mantle's presence, it was empty.

Eventually, on July 27, 1996, Correctional Officer Raul Munoz stopped inmate James M. Gilbert for a pat search. Mr. Munoz discovered that Mr. Gilbert had in his possession a set of headphones engraved with Mr. Harris' Department of Corrections' register number, and one Panasonic radio cassette player with the original owner's name and number sanded off and replaced with the name and reference number of *Kendrick Harris* (not Appellant Shelby Harris.) Mr. Gilbert was issued a conduct violation for violating institutional rules by having in his possession items not registered to him. Appellant Shelby Harris was also issued a conduct violation because another inmate had his possessions.

Officer Munoz placed the confiscated headphones and radio in the contraband room of ACC's administration building in accordance with prison policy. Officer Munoz also prepared an inmate property removal form regarding the confiscation of the set of headphones and radio. On that same day, Officer Michael Alexander interviewed both Mr. Gilbert and Mr. Harris regarding the conduct violations issued to

them by Officer Munoz. Subsequently, Mr. Gilbert was found guilty of the violation, and was disciplined. Mr. Harris, however, was cleared of any guilt in reference to the conduct violation report.

Mr. Harris then filed numerous internal resolution requests and grievances pursuant to set prison procedures, in an attempt to have his property returned to him. All of these requests and grievances were denied by prison officials. Ultimately, Superintendent Carl White considered Mr. Harris' Grievance 03–96–505. After a thorough investigation of the matter, the Superintendent determined that Mr. Harris did own a pair of headphones that were lost by ACC staff. Superintendent White did not determine, however, that Mr. Harris owned a radio cassette player that had been lost by staff members, stating that "it could not be determined who the item belonged to as it had been sanded." Superintendent White offered to settle Mr. Harris' claim for $6.25. Mr. Harris rejected this offer because the offer was conditioned on his acceptance of the figure as a final resolution of his grievance.

On January 7, 1998, Mr. Harris sued Officers Munoz, Alexander, Galloway, and Schulte in small claims court in Cole County, claiming that "these individuals negligently lost a walkman radio and headphones belonging to him." He requested damages of $3,000.00. On April 14, 1998, the small claims court entered judgment for defendants. Mr. Harris requested a trial *de novo* in the circuit court. The circuit court dismissed the case because Mr. Harris failed to pay the initial partial filing fee of $4.61. Mr. Harris then appealed Judge Sodergren's order to this Court, and on July 30, 1999, we reversed the trial court's judgment and remanded the case to the trial court for further proceedings. We so decided because the court's notice to Mr. Harris giving him 30

days to pay the $4.61 partial filing fee was sent to his old address, despite the fact that Mr. Harris had properly filed a change of address notice with the court. Mr. Harris thus received the notice some two weeks after it was sent, and, "due to the bureaucratic delay a prisoner encounters in requesting release of funds from an inmate account," he did not meet the deadline imposed by the court. We found that on these facts the trial court abused its discretion in dismissing Mr. Harris' case.

Upon remand to the trial court, Defendants filed a Motion for Summary Judgment, claiming that they were immune from suit for the loss of Mr. Harris' property under the doctrine of official immunity. On January 31, 2000, the trial court sustained Defendants' Motion for Summary Judgment, ruling that Defendants' actions with respect to Mr. Harris' property were discretionary in nature, and thus that "they [were] protected under the doctrine of official immunity." Mr. Harris' appeal follows.

## II. LEGAL ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when the pleadings, discovery, and affidavits reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Rule 74.04(c); *ITT Commercial Fin. Corp. v. Mid–Am. Marine*, 854 S.W.2d 371, 380 (Mo. banc 1993). Once the movant has demonstrated that no genuine issue of material fact exists, the burden shifts to the non-movant to show that there is a genuine dispute as to the material facts supporting the movant's right to summary judgment. *Id.* at 381–82. A genuine issue exists if there is a dispute that is real, not merely argumentative, imaginary or frivolous. *Id.* at 382. Mere speculation and conjecture are not

enough to create a genuine issue. *Id.* at 378.

"The propriety of summary judgment is purely an issue of law which we review *de novo* on the record submitted and the law." *Bonds v. Missouri Dep't of Mental Health*, 887 S.W.2d 418, 421 (Mo.App. 1994). We review the record in the light most favorable to the party against whom summary judgment was entered, and will affirm if the judgment is sustainable as a matter of law under any legal theory. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376.

### B. Official Immunity Does Not Apply

■ Respondents argue that the trial court's grant of summary judgment in their favor was appropriate in the case at bar, because they are shielded from liability for the loss of Mr. Harris' property by the doctrine of official immunity. The doctrine of official immunity shields public officers and state officials from civil liability for injuries arising out of their *discretionary* acts, functions, or omissions performed in the exercise of their official duties. *Charron v. Thompson*, 939 S.W.2d 885, 886 (Mo. banc 1996); *Clay v. Scott*, 883 S.W.2d 573, 576 (Mo.App. E.D.1994); *Scher v. Purkett*, 847 S.W.2d 76, 78 (Mo. App. W.D.1992). But, official immunity does not operate to shield public officers from civil liability for injuries arising out of their negligent performance of merely *ministerial* acts and functions in the exercise of their official duties. *Charron*, 939 S.W.2d at 886; *Clay*, 883 S.W.2d at 576; *Scher*, 847 S.W.2d at 78.

■ Generally speaking, discretionary acts, for purposes of official immunity, involve the exercise of reason in developing a means to an end, and the employment of judgment to determine how or whether an act should be performed or a course pursued. *Scher*, 847 S.W.2d at 78; *Clay*, 883 S.W.2d at 576. By contrast, a ministerial function is one that "a public officer is required to perform 'upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to [the officer's] own judgment or opinion concerning the propriety of the act to be performed.'" *Charron*, 939 S.W.2d at 886, *quoting, Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984). *See also Scher*, 847 S.W.2d at 78. "Whether a function is discretionary or ministerial is a case by case determination to be made after weighing 'such factors as the nature of the official's duties, [and] the extent to which the acts involve policymaking or the exercise of professional expertise or judgment.'" *Charron*, 939 S.W.2d at 886.

Respondents argue that their handling of Mr. Harris' property was a purely discretionary act because Section 217.197.1 delegates to prison officials the responsibility for making decisions concerning inmate property control:

> The amount and type of personal property an offender housed in a correctional center may possess shall be established by policy. Control and disposition of offender property as related to value and volume shall be set by policy.

Sec. 217.197.1 RSMo 1995. Respondents cite to *Charron* to support this interpretation of the statute. In *Charron*, an inmate left a box of property in the prison library overnight, and it was seized by officials during a routine sweep of the library for contraband. *Id.* at 886. Prison officials apparently had no set internal property policies or regulations governing what to do with seized property, and so the officials exercised their discretion and disposed of it. The trial court found that official immunity applied. On appeal, our Supreme Court affirmed. *See Charron*, 939 S.W.2d at 886–87. It noted that the legislature had declined to impose a mandatory statutory procedure to be followed

in regard to the treatment of inmate property in Section 217.197.1, and instead left it to the discretion of each correctional facility to set a policy as to the value and volume of property each inmate was allowed to have and how to manage that property. Therefore, the assistant prison superintendent's decision in *Charron* concerning how to dispose of seized contraband was a discretionary decision, and such decisions "are not ministerial in nature as they 'necessarily involve the exercise of a substantial degree of judgment and require consideration of the manifold aspects of prison operation.'" *Id.* at 887, quoting, *Kanagawa v. State*, 685 S.W.2d 831, 836 (Mo. banc 1985).

Mr. Harris concedes that under *Charron* prison officials have official immunity for their discretionary decisions in setting prison policy for disposal and safekeeping of inmate property. He argues, however, that his case involves negligence in the performance of ministerial duties different from the type of discretionary policy decision at issue in *Charron.* He directs us to Procedure Number IS22–1.1(I)(B), set forth in the Missouri Department of Corrections Departmental Manual, which provides that the prison has a promulgated policy permitting inmates to possess radio tape players. Further, Subpart III(D) of Procedure Number IS22–1.1 says that "[r]eplacement of, or reimbursement for, lost/damaged property will only be made in accordance with D3–6.1, Responsibility for Lost Offender Property." Procedure Number D3–6.1 directs that:

> Strict controls shall be maintained of offender property, when in the possession of staff. There are times when such property may be damaged or misplaced due to staff error. Offenders shall be provided with compensation for such losses . . .

Finally, Section III of Procedure Number D3–6.1 provides grounds upon which an inmate may recover for lost property:

> Only offender property in the possession of staff persons with the department shall be replaced or reimbursed for either of the following reasons . . . if such property, in the possession of staff persons, is damaged or misplaced without fault of the owner . . . [or][i]f staff negligence is determined the cause.

Mr. Harris agrees that ACC prison officials were exercising the discretion granted them by the legislature under Section 217.197.1 in setting these policies for handling inmate property and does not attack the substance of these policies. He does claim that the act of *following* promulgated prison policy is a ministerial function, and that prison officials negligently carried out these promulgated policies with respect to his property. By failing to follow the established prison procedures for care of his property and for reimbursement for lost prisoner property, he argues, the officers breached their duty to him and are subject to suit. We agree.

■ The Supreme Court of Missouri addressed a nearly identical issue in *Jungerman v. City of Raytown*, 925 S.W.2d 202 (Mo. banc 1996). In *Jungerman*, the plaintiff was arrested and detained by the City of Raytown. During the time he was in custody, his expensive watch which had been inventoried and secured by police was left in an open location rather than being locked away, as required by police procedure. It disappeared. 925 S.W.2d at 204. The plaintiff sued the city for the value of his watch. The jury returned a verdict in his favor, but the trial court granted the city's motion for JNOV on the ground that the city had official immunity from suit for failure to safeguard the plaintiff's property. On appeal, the city argued that the JNOV should be affirmed because

the act of inventorying and securing the plaintiff's property was discretionary rather than ministerial. *Id. at* 206. The Supreme Court disagreed. It held that deciding what police inventory procedures to implement may be a discretionary function, but that once a procedure for inventorying and holding property *"in a prescribed manner"* is set, the act of following the prescribed procedure lacks elements of policymaking or expertise that ordinarily comprise a discretionary function. *Id.* Therefore, the Court held, the ministerial act of following set procedure is not protected by official immunity. *Id. Jungerman* applied this rule to the case before it and found that official immunity did not apply because Mr. Jungerman showed that the police were negligent in following their own established procedures, and remanded for reinstatement of the jury verdict.[1]

Here, as in *Jungerman,* the prison had in place prescribed policies concerning the handling of non-contraband inmate property. Prison officials had a ministerial duty to follow these procedures. Once the headphones and tape player were in the control of the prison staff, prison officials were required to follow their own policies and procedures for managing that property. These procedures provided that "strict controls are to be maintained of offender property ... when in possession of staff." Safeguarding Mr. Harris' property required no particular expertise, nor did it involve any policymaking or the employment of judgment. Superintendent White

found that the prison had negligently failed to follow its policies and that, as a result, the headphones were lost or stolen. Directive D3–6.1 directed that "[o]ffenders shall be provided with compensation for ... losses" of property where the loss occurred while the property was under staff control or it was lost due to staff negligence. Both alternatives are present here. Moreover, Mr. Harris argues that he also proved the tape player was his. He argues the department failed to follow its own rules regarding compensating him for these lost or stolen items, claiming in his pleadings that the cost of replacing the Koss headphones is $100.00, and that the cost of replacing the tape player is $28.44—far more than the $6.25 for which the prison tried to force him to settle. Mr. Harris thus set out a claim of negligence and failure to follow a ministerial duty. His claim should not have been dismissed under the official immunity doctrine.

For these reasons, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

Presiding Judge SMART, and Judge ELLIS, concur.

---

1. Respondents claim that any reliance on *Jungerman* in this case is misplaced because, in *Jungerman,* plaintiff sued a municipality and its employees, rather than employees of the state, as is the case here. This distinction is spurious. While it is true that the immunity of municipalities and their employees is more limited in scope than that enjoyed by the state and its employees, *see Jungerman,* 925 S.W.2d at 204, there is no colorable difference between the "official immunity" doctrine for municipal employees, and the "official immunity" doctrine for state officials. Both involve an analysis of whether the acts engaged in by officials were "discretionary" or "ministerial" for the purposes of determining whether immunity applies. *Compare Jungerman,* 925 S.W.2d at 205 (setting forth "discretionary" vs. "ministerial" distinction in the context of municipal immunity) *with Charron,* 939 S.W.2d at 886 (setting forth same distinction in the context of state immunity).