# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 01-3336

_____

Michael R. Hawkins; David A.
Hennenflow; Jacqueline L.
Springer; Larry D. Johnson; Robert
A. Wescott; Tracy L. Clevenger;
William J. Fields; Maria E.
Morrison; Todd M. Herdman;
Nancy J. Johnson; Dana L.
Huffman,

        Appellees,

    v.

Gary Holloway,

        Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
Western District of Missouri.

_____

Submitted: May 13, 2002

Filed: January 17, 2003

_____

Before HANSEN, Chief Judge, MORRIS SHEPPARD ARNOLD, Circuit Judge, and
    PRATT, District Judge.[1]

_____

HANSEN, Circuit Judge.

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern
District of Iowa, sitting by designation.

Nine plaintiffs[2] who worked at various times for the Ray County, Missouri, Sheriff's Department brought this 42 U.S.C. § 1983 action against Sheriff Gary Holloway. Plaintiffs allege that Sheriff Holloway threatened to shoot several of them with his loaded handguns and that the sheriff inappropriately touched them and made sexually suggestive comments to them during the course of their employment. They claim the sheriff's malfeasance violated their substantive due process rights under the Constitution and gave rise to several violations of state law as well. On summary judgment, the district court ruled that Sheriff Holloway was not entitled to qualified immunity for the alleged violations of federal law or public official immunity under Missouri law for the plaintiffs' state law claims. We conclude, however, that the summary judgment record fails to support several of the plaintiffs' purported substantive due process violations and therefore we reverse the judgment of the district court as to those claims. We affirm in all other respects.

I.

We begin our review of the district court's judgment with the plaintiffs' constitutionally based substantive due process claims. In addition to providing procedural safeguards when the government seeks to deprive an individual of a protected right, the Fourteenth Amendment to the Constitution protects substantive aspects of an individual's liberty from impermissible government restrictions. Harrah Indep. Sch. Dist. v. Martin, 440 U.S. 194, 197 (1979). Substantive due process offers only limited protections and only guards against the exercise of arbitrary and oppressive government power. Daniels v. Williams, 474 U.S. 327, 331 (1986). In the context of allegations that a state official has abused his executive power, the test we employ to ascertain a valid substantive due process violation is "whether the

_____

[2]Plaintiff Nancy Johnson is docketed as an appellee, but she is not named in any of the claims at issue on appeal. After we heard arguments in this appeal, plaintiff Maria Morrison reached a settlement with Sheriff Gary Holloway.

behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 848 n.8 (1998). The Supreme Court has been reluctant to expand the protections afforded by substantive due process "because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended," and it has only done so with the "exercise [of] the utmost care." Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992). We have noted the following:

> The guarantee of due process draws a line between the power of the government, on the one hand, and the security of the individual, on the other. This line is not a fixed one like a property boundary. Its location must be surveyed anew by the court in each case through an examination of the benchmarks disclosed by the circumstances surrounding the case.

Burton v. Livingston, 791 F.2d 97, 99-100 (8th Cir. 1986).

## A. Facts Relevant to Qualified Immunity

Because Holloway appeals from the denial of qualified immunity, our review is quite limited. Normally, the denial of summary judgment is a nonfinal order that cannot be appealed. However, a defendant may immediately appeal a district court's denial of qualified immunity pursuant to the collateral order doctrine. In this context, our review is limited to determining whether the official is entitled to qualified immunity based on the summary judgment facts as described by the district court. Turner v. Ark. Ins. Dep't, 297 F.3d 751, 754 (8th Cir. 2002). In other words, we have jurisdiction to review whether an official is entitled to immunity to the extent the question turns on an issue of law, but we may not review a district court's conclusion that the pretrial record presents a sufficient factual dispute requiring a trial.[3] Johnson

---

[3]As the Supreme Court recognized in Johnson, 515 U.S. at 319, there might be times when it is not clear what disputed facts the district court relied on in denying

v. Jones, 515 U.S. 304, 319-20 (1995). With this in mind, the qualified immunity inquiry requires us first to determine whether the summary judgment facts as described by the district court demonstrate a violation of the plaintiffs' constitutional substantive due process rights, and if so, we must then ascertain whether the violations were clearly established at the time of the sheriff's alleged conduct. See Sexton v. Martin, 210 F.3d 905, 909 (8th Cir. 2000).

Plaintiffs' substantive due process claims can be grouped into two categories: (1) those involving the sheriff's alleged sexually assaultive and abusive behavior directed against both male and female employees, and (2) those involving the sheriff's threats to shoot several of the employees during their employment. Because the employees' claims arise out of numerous and distinct episodes of the sheriff's alleged malfeasance, we set forth the relevant summary judgment facts individually by plaintiff as the district court described them. We have also reviewed the summary judgment record to ascertain whether it contains any facts that the court may have assumed that would support its denial of qualified immunity. See supra at 3 n.3.

## Michael Hawkins

Michael Hawkins alleges that Sheriff Holloway grabbed Hawkins' clothed crotch area and touched his genitals through his clothing. The sheriff allegedly made comments such as, "can I have some lovin's?," or other vulgar sexual remarks when he touched or grabbed Hawkins. Hawkins testified during his deposition that he believed the remarks were intended as sexual overtures. Hawkins identifies other occasions when the sheriff pinched, grabbed, or jammed his thumb into Hawkins'

---

summary judgment. In such a situation, the Court explained that "a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." Id.

clothed buttocks, and one occasion when the sheriff bent down and sucked on Hawkins' ear lobe and told Hawkins that he was just trying to give him "some lovin's." (J.A. at 1245.) Hawkins also claims that in September 1997, Sheriff Holloway pulled his service revolver on him after Hawkins made a joke about the sheriff. The sheriff shoved the weapon into Hawkins' genitals and, with his finger on the trigger, told Hawkins, "You get smart with me, I'll blow your f___ing balls off." (J.A. at 315.) Hawkins identifies several other occasions when the sheriff pointed his weapon at him.

### David Hennenflow

David Hennenflow worked in the department from June 1997 until he was fired in August 1999. He claims that the sheriff repeatedly grabbed his clothed chest and buttocks throughout his employment and that the sheriff frequently asked him if he wanted to see the sheriff's "pee pee." The sheriff also twice asked whether Hennenflow wanted "to take the wrinkles out" of the sheriff's penis. (J.A. at 381.) Like Hawkins, Hennenflow identifies an incident when the sheriff pointed a weapon at him. In October 1997, Hennenflow made a comment to the sheriff about taking night calls. In response, Sheriff Holloway pointed his weapon at Hennenflow's crotch and stated, "I'll blow your balls off."

### Jacqueline Springer

Jacqueline Springer, a deputy from October 1996 until November 1999, alleges the sheriff inappropriately touched her and made vulgar comments to her during her employment. The sheriff once came up from behind her and placed his hands around her and grabbed her breasts. (J.A. at 629.) On several occasions, the sheriff stood next to her and pulled her close to him. Often times when the sheriff did so, he laid his hand on Springer's breast. The sheriff often picked up Springer's beverage, placed it near his crotch, and asked Springer if she wanted him to fill it up. Springer was

5

also present when the sheriff pulled his weapon on others, and she feared for her safety during the incidents.

## Larry Johnson

Larry Johnson worked as a sheriff's deputy from May 1997 until he was terminated in August 1999. Johnson was present when the sheriff pointed his weapon at Hawkins' and Hennenflow's crotches and when the sheriff pointed a weapon at a state trooper while at the sheriff's home. Numerous individuals, including Hawkins and plaintiff Robert Wescott, were at the sheriff's home for a barbeque. The trooper moved some papers on the sheriff's counter. Upset at the trooper, the sheriff then pulled a loaded gun from beneath the counter, pointed it at the trooper, and told the trooper to leave the papers alone. Fearing that the sheriff intended to shoot the trooper, Johnson placed his hand on his own weapon as a precaution. The sheriff eventually put down his weapon, and the group continued their meal. Johnson was also present when Sheriff Holloway allegedly pulled a weapon on a citizen visiting the sheriff's department. In both incidents, Johnson feared for his own safety even though he was not the subject of the sheriff's scorn.

## Robert Wescott

Robert Wescott, a sheriff's deputy from April 1998 until October 1999, alleges that the sheriff grabbed or pinched his clothed buttocks on numerous occasions and slapped him in the back of the head once. The sheriff also made vulgar comments to Wescott, such as "wanna see my pee pee?" Wescott also points out that he was present when the sheriff pulled a weapon on the trooper and the citizen.

## Tracy Clevenger

Tracy Clevenger, a deputy from June 1995 until September 1999, alleges that the sheriff grabbed and squeezed the inside of his thigh numerous times and that the sheriff's hand often touched his genitals through his pants when he did so. Sheriff Holloway also made abusive comments and sexual remarks to Clevenger, such as nicknaming him a portion of the female anatomy and asking him how many men came to his "sperm factory." The sheriff once unzipped his pants and placed Clevenger's rolled up paycheck in them and suggested that Clevenger perform a sex act if Clevenger wanted his paycheck. Clevenger alleges other offensive behavior on the sheriff's part and that he was present when the sheriff pointed his weapon, with his finger on the trigger, at a city police officer.

## William Fields

William Fields alleges that the sheriff frequently grabbed the inside of his thigh, touching his genitals several times, and that the sheriff often groped his chest and tried to touch him. He also contends the sheriff placed a banana by his crotch and asked Fields if he wanted a banana, that the sheriff jabbed Fields in the buttocks with a cane, and that the sheriff frequently made vulgar comments to him. The sheriff also pulled a weapon on Fields and pointed it at his chest. The sheriff then told him, if the first gun "won't do it, this one will," and pulled a second weapon out and pointed it at Fields.

## Todd Herdman

Todd Herdman alleges that Sheriff Holloway grabbed, pinched, and tickled him throughout his employment and that the sheriff made childish and vulgar comments to him, such as, "Do you want to see my pee pee?" and asked if Herdman wanted some "lovin's." The sheriff also became upset at Herdman once because no one had

7

made coffee. The sheriff told Herdman to get up and make the coffee or the sheriff "was going to kick [Herdman's] ass up between [his] shoulders." (J.A. at 350.)

### Dana Huffman

Dana Huffman was a secretary in the sheriff's department from March 1996 until January 1998, and describes two incidents when Sheriff Holloway pointed his service revolver at her. On one of the occasions, the sheriff pulled his gun out of its holster, pointed it at Huffman, and ordered her back to her office. She responded, "don't shoot me." Huffman also claims the sheriff asked her ten times whether she wanted "some lovin's" and called her "stupid" and a "fat ass." She also identifies an incident when she retreated to the men's restroom as the sheriff pointed his finger at her and berated her.

### B. Sexual Assaults

Relying on our court's prior decisions in Haberthur v. City of Raymore, 119 F.3d 720 (8th Cir. 1997), and Rogers v. City of Little Rock, 152 F.3d 790 (8th Cir. 1998), the district court denied qualified immunity, reasoning that several of the plaintiffs demonstrated a genuine issue of fact as to whether the sheriff had sexually assaulted them in violation of their substantive due process right to bodily integrity. We conclude, however, that the sheriff's alleged conduct is distinguishable from that in Haberthur and Rogers and with one exception is insufficient to raise a genuine issue of fact concerning whether that conduct amounts to an abuse of governmental power that is "so 'brutal' and 'offensive'" that it was conscience shocking. S.S. v. McMullen, 225 F.3d 960, 964 (8th Cir. 2000) (quoting Lewis, 523 U.S. at 847), cert. denied, 532 U.S. 904 (2001); see Lewis, 523 U.S. at 848 n.8 (cautioning against demoting the Constitution to "a font of tort law").

8

The Supreme Court has not yet had the opportunity to address whether a sexual assault committed by a state actor may give rise to an actionable substantive due process violation under § 1983. See Rogers, 152 F.3d at 795. Our court, however, has had more than one opportunity to weigh in on the issue. In Haberthur, we reversed the district court's dismissal of a plaintiff's substantive due process claim arising out of a police officer's sexually-assaultive conduct. We recognized that an actionable claim under § 1983 for a substantive due process violation may accrue where a public official engages in "sexual fondling and touching or other egregious sexual contact" under color of state law and concluded the plaintiff alleged facts demonstrating such conduct. Haberthur, 119 F.3d at 723. In particular, the plaintiff alleged that the police officer showed up at her workplace, placed his hands under her shirt and fondled her breast, and caressed her body while making sexually suggestive comments to her. Id. at 724. We characterized the alleged conduct as "intrusive, demeaning, and violative of [the plaintiff's] personal integrity," and recognized that the officer had threatened adverse police action in making his unwanted advances. Id.

A little over a year later, in Rogers, we upheld a district court's finding following a bench trial that a police officer had sexually assaulted a woman in violation of her substantive due process rights. 152 F.3d at 797. The facts established that the officer pulled the woman over for a traffic violation and later followed her home under the guise of obtaining her missing proof of automobile insurance. At her home, the officer ordered her to disrobe, pushed her onto her bed, and had sexual intercourse with her. We concluded that the facts supported a finding that the intercourse was nonconsensual and that the officer accomplished the rape through the exercise of coercive power that he possessed as a law enforcement officer. 152 F.3d at 796-97. Recognizing that the officer's conduct was undertaken with no legitimate governmental objective, we held that a police officer's commission of a rape fell at the extreme end of the "'arbitrary exercise of the powers of

9

government'" that substantive due process protections were intended to guard against. Id. at 797 (quoting Lewis, 523 U.S. at 845).

It is readily apparent that the allegations of "sexual assault" at issue in this case are of a different breed than those in Rogers and Haberthur and (with the exception of Ms. Springer) fail to establish the type of "sexual fondling and touching" that we have indicated may support a constitutional violation of one's bodily integrity. Haberthur, 119 F.3d at 723. In our review of the summary judgment record, Hawkins, Hennenflow, Springer, Wescott, Clevenger and Fields make the most egregious charges of sexual misconduct against Sheriff Holloway. They all allege that while the sheriff was purportedly engaging in office horseplay, he grabbed, touched, or brushed their clothed erogenous zones or other sensitive areas of their body, and made sexually suggestive comments when doing so. While the sheriff's alleged conduct with respect to the male officers is offensive and despicable, and certainly inexcusable, it pales in comparison to the violation of personal integrity occasioned by the officer's rape in Haberthur and the officer's actions in Rogers of reaching under a woman's clothing and fondling her breasts. With respect to Ms. Springer, we find the sheriff's allegedly repeated intentional touching of her breasts to constitute a violation of her bodily integrity sufficient to support a substantive due process claim.

The sheriff's conduct at issue is also distinguishable from that in Haberthur and Rogers because the sheriff's touchings were not accompanied by threats of official action if the employees rebuffed or complained of his perverted and juvenile behavior. Cf. Haberthur, 119 F.3d at 724 ("The implication for further sexual contact was in the larger context of threatening adverse official action by way of a ticket and following her in his police car."). Instead, the sheriff engaged in his offensive behavior in the context of junior high locker room style male horseplay in a workplace that appears to us to have been permeated with childish and ill-advised behavior unbecoming of law enforcement officers. Regardless of the sheriff's true

10

motivations in engaging in this conduct, he did not threaten adverse police action. Pointing to the sheriff's threats to shoot employees, plaintiffs argue that the sheriff sought further sexual gratification by creating an environment where his employees feared him and that he abused his law enforcement authority in that manner. A reasonable jury, however, could not make that inferential leap because the sheriff's alleged threats were unconnected to the specific events of his alleged sexually inappropriate behavior. The two categories of the sheriff's conduct, therefore, must be viewed as separate and distinct for purposes of the plaintiffs' substantive due process claims.

With the exception of Ms. Springer's complaints, the plaintiffs' allegations of inappropriate sexual contact on the sheriff's part instead fall into the category of misconduct for which no constitutional remedy is available. See Collins, 503 U.S. at 128 (stating that the Due Process Clause does not purport to supplant state tort law); Askew v. Millerd, 191 F.3d 953, 958 (8th Cir. 1999) (noting that § 1983 does not provide a remedy for every assault or battery that violates state law). Not every inappropriate or unwanted touching by a public official, even if accompanied by vulgar comments of a sexual nature, can amount to the "brutal and inhumane abuse of official power" necessary to demonstrate a violation of an individual's bodily integrity sufficient to support a constitutional violation. Moran v. Clarke, 296 F.3d 638, 647 (8th Cir. 2002) (en banc) (discussing the severity of conduct necessary to establish a violation). For instance, in Reeve v. Oliver, our court refused to find a substantive due process violation when a state actor touched and rubbed a woman's back while staring at her chest. 41 F.3d 381, 382-83 (8th Cir. 1994). Similarly, in Lillard v. Shelby County Bd. of Educators, 76 F.3d 716, 726 (6th Cir. 1996), the Sixth Circuit held that a teacher's act of rubbing a student's stomach while he made suggestive remarks to her did not violate the student's right to bodily integrity. See also Petrone v. Cleveland State Univ., 993 F. Supp. 1119, 1126 (N.D. Ohio 1998) (holding that allegations of a supervisor's sexual advances, including one where the supervisor slid his hand along a woman's leg toward her pelvic area, did not state a

substantive due process claim), <u>disapproved of on other grounds in</u> <u>Kovacevich v. Kent State Univ.</u>, 224 F.3d 806 (6th Cir. 2000).  <u>Cf.</u> <u>Berryhill v. Schriro</u>, 137 F.3d 1073, 1076 (8th Cir. 1998) (concluding that brief touches to a person's buttocks do not support a finding of a sexual assault amounting to cruel and unusual punishment).  It is a sad commentary on the state of our society, but allegations similar to those the plaintiffs make against the sheriff are commonplace in many Title VII hostile work environment cases that come before us, and they simply do not amount to behavior that the Constitution prohibits under the rubric of contemporary conscience shocking substantive due process.  State tort law is, instead, a proper source of any remedy.

Plaintiffs rely on several cases from other jurisdictions, which they contend support a contrary conclusion.  After reviewing those decisions and many others, we are satisfied that they only illustrate that the sheriff's alleged conduct here (with the exception of his physical conduct toward Ms. Springer) does not rise to a "sexual assault" in violation of the plaintiffs' <u>constitutional</u> rights.  <u>See, e.g.</u>, <u>Wudtke v. Davel</u>, 128 F.3d 1057, 1063 (7th Cir. 1997) (facts showing school superintendent forced teacher to perform fellatio supported substantive due process violation); <u>Jones v. Wellham</u>, 104 F.3d 620, 628 (4th Cir. 1997) (recognizing that an officer's forcible rape of a woman violates her substantive due process rights); <u>Bennett v. Pippin</u>, 74 F.3d 578, 589 (5th Cir.) (sheriff's rape of murder suspect violated her right to bodily integrity), <u>cert. denied</u>, 519 U.S. 817 (1996); <u>Doe v. Taylor Indep. Sch. Dist.</u>, 15 F.3d 443, 451-52 (5th Cir.) (15-year-old female student was deprived of substantive due process when sexually molested by her teacher), <u>cert. denied</u>, 513 U.S. 815 (1994); <u>Stoneking v. Bradford Area Sch. Dist.</u>, 882 F.2d 720, 727 (3d Cir. 1989) (allegations that teacher coerced student into performing sex acts were sufficient to constitute an intrusion into the child's bodily integrity), <u>cert. denied</u>, 493 U.S. 1044 (1990).

Plaintiffs point to other evidence of the sheriff's abrasive conduct, verbal harassment, physical altercations of a nonsexual nature, and other unprofessional conduct to support their substantive due process claims.  While there is abundant

evidence of these incidents in the record, it is insufficient to support a constitutional violation. See Costello v. Mitchell Pub. Sch. Dist. 79, 266 F.3d 916, 921 (8th Cir. 2001) (berating student in front of class does not amount to a substantive due process violation); Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000) (yelling, screaming, name-calling, and other verbal abuse does not demonstrate a constitutional violation); Lillard, 76 F.3d at 725-26 (stating that it is inconceivable that a "single slap" could shock the conscience); Jones v. Clinton, 974 F. Supp. 712, 725 (E.D. Ark. 1997) (finding no substantive due process violation where the governor allegedly sought sex from an employee, exposed himself, and asserted that he possessed ongoing authority over the female state employee). Because the facts relied on by the district court do not demonstrate a violation of the plaintiffs' bodily integrity resulting from a sexual assault (with the exception of Ms. Springer's case), Sheriff Holloway is entitled to summary judgment on his assertion of qualified immunity. He is not entitled to summary judgment on Ms. Springer's claims.

## C. Threats of Deadly Force

We turn next to plaintiffs' claims that Sheriff Holloway pointed loaded weapons at several employees and threatened to shoot them. As one would imagine, neither party has cited a case, nor have we come across one, where a public official has threatened to employ deadly force as a means of employee discipline or as a way to express frustration. The district court relied on Black v. Stephens, 662 F.2d 181 (3d Cir. 1981), cert. denied, 455 U.S. 1008 (1982), in concluding that plaintiffs' allegations were sufficient to support a substantive due process violation. In Black, the Third Circuit held that a plain-clothes officer's conduct of pointing his weapon at the head of a motorist, without any legitimate law enforcement purpose for doing so, was sufficient to satisfy the shocks-the-conscience standard. Id. at 188-89. Sheriff Holloway does not question the Third Circuit's conclusion in Black but argues that he threatened his employees in a joking manner and that the employees perceived his conduct as a joke. In the event we find that his alleged conduct establishes a

13

constitutional violation, he argues, alternatively, that he is entitled to qualified immunity because there has been no judicial opinion that would have alerted him to the unlawfulness of his acts.

Only four of the plaintiffs (Hawkins, Hennenflow, Fields, and Huffman) have alleged facts showing that the sheriff pulled a gun on them and threatened to shoot them. In viewing the facts in their favor, we must reject the sheriff's perception of his gun-slinging incidents as jovial horseplay among colleagues. As an initial point, we note the astounding fact that Sheriff Holloway <u>actually admitted</u> during his deposition testimony that he often pulled weapons on his employees and that it was "just in fun." Not to any great surprise, plaintiffs contend the occurrences were anything but fun. They present evidence that the sheriff pointed loaded weapons at them at close range, often pointing to their genitals, and made direct and forceful threats to kill them or cause grievous bodily injury. They also point to evidence that the sheriff was agitated during the incidents, that his finger was on the trigger, and that they perceived his threats to be real. The employees who found themselves facing the sheriff's barrel raised their hands in surrender, asked the sheriff to put his weapon away, or otherwise tried to placate the sheriff, thus permitting an inference that the sheriff's threats were serious ones. A genuine issue of material fact therefore exists as to whether the sheriff's conduct amounted to a sincere threat of violence rather than a joke.

As to whether the facts viewed in the plaintiffs' favor support a constitutional violation, we agree with <u>Black</u>'s holding that an official's threat to employ deadly force for no legitimate reason rises to a substantive due process violation. The Supreme Court recognized in <u>Collins v. City of Harker Heights</u> that substantive due process does not protect municipal employees from the unreasonable risk of harm in the workplace. 503 U.S. at 129. But the sheriff's alleged conduct cannot be characterized as an unreasonable risk incident to one's service as an employee in a sheriff's department. Instead, the facts demonstrate that the sheriff deliberately abused his power by threatening deadly force as a means of oppressing those

14

employed in his department, thus elevating his conduct to the arbitrary and conscience shocking behavior prohibited by substantive due process. See Robinson v. Solano County, 278 F.3d 1007, 1014 (9th Cir. 2002) (discussing in dictum that an officer's conduct in pointing a loaded weapon at a civilian without a legitimate law enforcement basis shocks the conscience); see also Burton, 791 F.2d at 99, 100-101 (finding that a prisoner had stated a substantive due process claim when he alleged that a prison guard drew and pointed a loaded pistol at him and ordered him to run so that the guard would be justified in shooting him).

We reject the sheriff's argument that if there was a violation, it was not one of clearly established law. Qualified immunity protects a governmental official from civil liability when his "conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." Sexton, 210 F.3d at 909 (internal quotations omitted). The Supreme Court recently held that the law is clear if it gives the official "fair warning" that his conduct violated an individual's rights when the officer acted. Hope v. Pelzer, 122 S. Ct. 2508, 2516 (2002). Although the sheriff faults the district court for failing to cite to any case that is factually similar, it was not necessary for the court to do so because Sheriff Holloway's alleged conduct was so far beyond the bounds of the performance of his official duties that the rationale underlying qualified immunity is inapplicable. As the Fourth Circuit explained in In re Allen, 106 F.3d 582, 593 (4th Cir. 1997), cert. denied, 522 U.S. 1047 (1998), "an official who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity under § 1983." See also Butz v. Economou, 438 U.S. 478, 495 (1978) (stating that qualified immunity does not "abolish the liability of federal officers for actions manifestly beyond their line of duty"); Jones v. Clinton, 72 F.3d 1354, 1358 (8th Cir. 1996) ("We are unaware . . . of any case in which any public official ever has been granted any immunity from suit for his unofficial acts . . . ."), aff'd 520 U.S. 681 (1997). No

15

reasonable official in the sheriff's shoes could have thought it within his duties to threaten his employees with deadly force.[4]

Several plaintiffs suggest that the sheriff violated their substantive due process rights because they were placed in harm's way when the sheriff threatened others with his weapon. However, an official's conduct must generally be intended to inflict harm to be conscience shocking in the constitutional sense. Lewis, 523 U.S. at 849. There is no evidence that the sheriff directed any threats at the bystanders during the incident, or any other evidence that the sheriff wanted to harm the bystanders during the episodes. We therefore conclude that the bystanders can maintain no substantive due process claim against the sheriff.

## II.

In addition to their federal claims, Hawkins and Johnson allege state law claims that Sheriff Holloway wrongfully discharged them and tortiously interfered with their contractual relations or valid business expectancy. They assert that Sheriff Holloway fired them because they reported his offensive and dangerous behavior to the FBI, county officials, and a local circuit judge. Hawkins, Springer, and Wescott also allege claims that the sheriff's violent and sexual misconduct caused negligent infliction of emotional distress. The district court ruled that Sheriff Holloway was not entitled to public official immunity under Missouri law because the facts, viewed in

---

[4]We pause to note that if the trier of fact ultimately determines that the sheriff's threats amounted to misguided and dangerous horseplay among colleagues, his conduct would not give rise to a substantive due process violation, for gross negligence is not actionable under the Fourteenth Amendment's substantive due process guarantees. See Wilson v. Lawrence County, 260 F.3d 946, 955 (8th Cir. 2001).

the plaintiffs' favor, demonstrated that the sheriff's conduct was corrupt or otherwise undertaken in bad faith. We agree.

Under Missouri law, "[t]he doctrine of official immunity shields public officers and state officials from civil liability for injuries arising out of their discretionary acts, functions, or omissions performed in the exercise of their official duties." Harris v. Munoz, 43 S.W.3d 384, 387 (Mo. Ct. App. 2001). Generally speaking, discretionary acts are those acts involving the official's exercise of reason in developing a means to an end, and "the employment of judgment to determine how or whether an act should be performed or a course pursued." Id. As the district court recognized, however, official immunity does not apply where the official's discretionary act was undertaken in bad faith or with malice. Davis v. Bd. of Educ., 963 S.W.2d 679, 688-89 (Mo. Ct. App. 1998).

The record contains ample evidence supporting the district court's conclusion that the plaintiffs' state law claims are premised on the sheriff's bad-faith conduct. The negligent infliction claims are based on the same conduct underlying the parties' substantive due process claims, and we find it impossible to characterize that conduct–groping employees, making lewd sexual comments, and threatening employees with death or physical harm–as the "exercise of reason" to which immunity attaches. With respect to Hawkins' and Johnson's claims arising out of their termination, they present evidence that the sheriff began a campaign to justify their termination after the employees complained of his conduct and that the sheriff asked another officer to prepare a false affidavit (in exchange for a promotion) to support the legitimacy of the sheriff's termination decision. Accordingly, a jury could reasonably infer that the sheriff's actions were undertaken in bad faith or with malice; thus, the plaintiffs' state law claims are not barred by official immunity.

17

III.

We conclude that only plaintiffs Hawkins, Hennenflow, Fields, and Huffman have alleged facts that would permit a reasonable jury to find that Sheriff Holloway violated their clearly established substantive due process rights. The potential violations arise solely from these plaintiffs' allegations that the sheriff threatened them with a loaded weapon. We also conclude that only Ms. Springer has sufficiently alleged a constitutional violation based on the invasion of her bodily integrity. To the extent the district court found otherwise, its judgment is reversed. We affirm the judgment of the district court in all other respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.