433 F.Supp. 168 (1977)
Stanley L. VIGRAN and Bertran Glazer, Plaintiffs,
v.
John H. POELKER, Mayor of the City of St. Louis, Missouri; John Bass, Comptroller of the City of St. Louis, Missouri, and Arthur J. Kennedy, Director of Manpower, Office of Manpower of the City of St. Louis, Missouri, Defendants.
No. 76-1098C(3).
United States District Court, E. D. Missouri, E. D.
May 31, 1977.
*169 Donald U. Beimdiek, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for plaintiffs.
Jack L. Koehr, City Counselor, Charles W. Kunderer, Assoc. City Counselor, St. Louis, Mo., for defendants.

MEMORANDUM
WANGELIN, District Judge.
This is an action by the owners of the Shell Building, an office building in downtown St. Louis, Missouri, to recover rent. Plaintiffs seek to require defendants to pay funds allegedly held in constructive trusts. Jurisdiction is alleged under 28 U.S.C. § 1332. The matter was submitted on a stipulated record and after considering the entire record, the Court makes the following findings of fact and conclusions of law.

Findings of Fact
1. Plaintiffs Vigran and Glazer are citizens and residents of the State of Indiana. They are the owners of the Shell Building. The building was purchased from Massachusetts Mutual Life Insurance Company.
2. At the time this suit was filed defendant John H. Poelker was the Mayor of the City of St. Louis, Missouri. Defendant John Bass was the Comptroller of the City of St. Louis, Missouri, and defendant Arthur J. Kennedy was Director of Manpower for the City of St. Louis.[*]
3. In 1972 the then Mayor of the City of St. Louis, Alphonso J. Cervantes, created within his office the "Office of Manpower" and employed John L. Drew III as Director of Manpower Planning. Drew was replaced by Arthur J. Kennedy in 1974.
4. Following the creation of the Office of Manpower Planning the operation was funded until September 24, 1974, by an "Operation Planning Grant" awarded by the Department of Labor pursuant to the Manpower Development and Training Act of 1962 as amended, 42 U.S.C. § 2571.
5. On June 1, 1972, Massachusetts Mutual Life Insurance Company and John L. Drew III (purporting to act on behalf of the Office of Manpower Planning) signed a *170 lease agreement. On February 1, 1974, a purported rider to the lease was signed by the same parties and on May 8, 1974, a second purported rider was signed by the parties with the consent of defendant Poelker. No signatures of the City Comptroller, City Counselor or Mayor appear on a lease or riders.
6. From September 24, 1974, the Office of Manpower Planning was financed with grants from the United States Department of Labor pursuant to the Comprehensive Employment and Training Act of 1973, 29 U.S.C. § 801.
7. On April 17, 1973, defendant Poelker succeeded Alphonso J. Cervantes as Mayor of the City of St. Louis and continued the operation of the Office of Manpower as a function of the Office of the Mayor.
8. Defendant Poelker executed applications for federal assistance for the period, September 24, 1974 through September 30, 1976, pursuant to which the Department of Labor paid funds to "Mayor's Office, City of St. Louis". The grant documents also designated the "City of St. Louis" as grantee. A total of Fifteen Million Seven Hundred and Eighty Four Thousand Three Hundred and Thirty Dollars ($15,784,330.00) was paid for the operation of a comprehensive employment and training program within the City of St. Louis for fiscal years 1974, 1975 and 1976.
9. In connection with the applications for federal assistance while John Drew III was employed, budgets were submitted to the Department of Labor containing a line item for rent to be paid by the Office of Manpower Planning.
10. For the period, June 1, 1972 until July 1, 1975, the City of St. Louis had not enacted any ordinance establishing an Office of Manpower or designating a Director of Manpower. By Ordinance No. 57035, effective July 11, 1975, the City of St. Louis established an Office of Manpower.
11. Funds received from the United States Department of Labor are paid by a letter of credit which is sent to the Comptroller who is in charge of banking for the federal funds. The Office of Manpower approves all invoices and prepares a federal voucher which is forwarded to the Comptroller's office. Checks are prepared pursuant to said vouchers and mailed by the Comptroller's office and the disbursements are charged to the federal funds on deposit.
12. From June 1, 1972 through October of 1974, rent payments for the office facilities utilized by the Office of Manpower were paid to plaintiffs' agent, Clarence M. Turley, Inc. ("Turley") with funds from the Department of Labor operational planning grant. From October of 1974 through July 28, 1975, rent was paid to Turley from a Department of Labor grant under Title I of the Comprehensive Employment and Training Act.
13. Subsequent to the signing of the second rider to the lease, Turley expended a total of Ten Thousand Six Hundred Five Dollars and Forty-Four Cents ($10,605.44) for painting, decorating, construction and electrical changes for the office spaces occupied by the Office of Manpower Planning on the Fifth Floor of the Shell Building.
14. Defendant Kennedy gave notice to Turley that the Office of Manpower was vacating the leased premises effective July 28, 1975. After that date Manpower occupied premises owned by the City of St. Louis.
15. A payment of Two Thousand Three Hundred and Seventy-Seven Dollars and Fifty Cents ($2,377.50) dated July 7, 1975 was made to Turley for the use of the Shell Building for the month of July, 1975.
16. For the period August 1, 1975 through June 30, 1976 no payments were made to plaintiffs for the office space. Defendants have paid no rent since moving to City-owned property.
17. Subsequent to the vacation of the premises by the Office of Manpower, plaintiffs made all reasonable efforts to rent the premises and were unable to do so. Plaintiffs received no income from the premises for the term ending June 30, 1977. Plaintiffs made demand for payment of rent by letter of September 17, 1975.
*171 18. By letter dated July 21, 1975, City Counselor Jack L. Koehr advised Mr. H. E. Hetzler, agent for plaintiffs, that the lease and riders, not having been executed by the City pursuant to authorization, did not constitute a legal obligation of the City of St. Louis.
19. City records did not (and still do not) contain an ordinance authorizing the Mayor, John L. Drew III or any City officer to execute the lease or two riders between plaintiffs' predecessor and the City of St. Louis.
20. The Charter of the City of St. Louis requires in part that appropriations be made pursuant to ordinance before City money may be expended. The Charter also requires all contracts with the City to be approved and signed by the Comptroller.

Conclusions of Law
The law in Missouri is clear that all contracts with municipalities must be in writing and be authorized by local law or ordinance. Section 432.070, RSMo 1969. Contracts not so executed are not enforceable. Donovan v. Kansas City, 352 Mo. 430, 175 S.W.2d 874 (En Banc, 1943), appeal dismissed, 322 U.S. 707, 64 S.Ct. 1049, 88 L.Ed. 1551 (1944); Fulton National Bank v. Callaway Memorial Hospital, 465 S.W.2d 549 (Mo.1971). In fact, recovery of payments made under such contracts is allowed under certain circumstances. County of St. Francois v. Brookshire, 302 S.W.2d 1 (Mo. 1957); Fulton v. City of Lockwood, 269 S.W.2d 1 (Mo.1954).
There is no question that the lease agreement in this case does not meet the requirements of the Missouri statute. Recognizing this plaintiffs based their action on another theory. They asked the Court to use its equitable powers to enforce a "constructive trust" on their behalf and argue that retention by defendants of federal funds allocated to rent payments would result in an unjust enrichment.
A constructive trust is defined as:
A relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property.
* * * * * *
A constructive trust is remedial in nature.
Restatement (Second) of Trusts, § 1e (1957)
Applying this doctrine to the facts of this case, it does not appear that plaintiffs are entitled to relief.
First, defendants must have acquired or be retaining the funds wrongfully. Obviously the funds were not acquired wrongfully. For defendants to be retaining the funds wrongfully plaintiffs must show some right to them. Plaintiffs only "right" to the funds is through the lease, which is unenforceable. This reasoning illustrates that the constructive trust doctrine is a remedy, not a cause of action.
Also, plaintiffs must show that retention of the funds would result in the unjust enrichment of defendants. Although plaintiffs state repeatedly that they are not suing the City of St. Louis, the City is the entity that benefits from the federal grant. The named defendants have not been unjustly enriched in any way. Thus, there can be no application of the constructive trust doctrine here without the City of St. Louis as a defendant and the Court will enter judgment for defendants.
NOTES
[*] A City election was held between the date of the submission of this case and the filing of this memorandum. The parties have not moved to substitute any parties defendant but that seems unnecessary in light of the disposition of the matter.