The DIVISION CAVALRY BRIGADE,
Plaintiff/Appellant,

v.

ST. LOUIS COUNTY,
Defendant/Respondent.

No. ED 90693.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 7, 2008.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 13, 2008.

Application for Transfer Denied
Dec. 16, 2008.

Timothy P. Philipp, Bridgeton, MO, for appellant.

Patricia Redington, County Counselor, Robert C. Moore, Assistant County Counselor, St. Louis, MO, for respondent.

OPINION

MARY K. HOFF, Judge.

The Division Cavalry Brigade (DCB) appeals from the trial court's grant of summary judgment in favor of St. Louis County on DCB's petition against St. Louis

County alleging breach of contract. We affirm.

## *Factual and Procedural History*

DCB is a Missouri not-for-profit corporation that attempts to enhance the public's understanding of historical events through living history programs, which highlight the historical significance of United States mounted and dismounted soldiers. St. Louis County is a chartered county of the State of Missouri.

In 2003, St. Louis County approached DCB and asked if DCB was interested in leasing the General Daniel Bissell House, barn, maintenance buildings, and park grounds (Bissell Property), all of which were owned by St. Louis County. In early 2004, DCB and St. Louis County began negotiating the terms of the proposed lease. St. Louis County Department of Parks and Recreation Planning Manager Susan Poling (Poling) represented St. Louis County during the negotiations.

On October 15, 2004, St. Louis County Department of Parks and Recreation Acting Director Lindsey Swanick (Swanick) addressed a letter to St. Louis County Executive Charlie Dooley (Dooley) requesting that the St. Louis County Council (Council) enact legislation allowing St. Louis County to enter into a lease agreement with DCB for the Bissell Property. Swanick indicated that the Bissell Property included buildings and 9.3 acres of grounds and that the term of the lease would be for 25 years with two additional five-year renewal options. Swanick also indicated that DCB's lease payments would be $1 per year for the first three years and five percent of DCB's annual gross income generated through management and operation of the Bissell Property thereafter and that DCB would make building improvements during the first five years of the lease and would provide overall site maintenance.

On October 19, 2004, Dooley addressed a letter to the Council in which he restated the proposed terms of the proposed lease described in Swanick's letter. Dooley recommended that the Council take the necessary legislative action to approve and to authorize the proposed lease between DCB and St. Louis County. Dooley's signature appeared on the letter. Swanick's letter was attached to Dooley's letter.

Also on October 19, 2004, the Council introduced and perfected Bill No. 362,2004, which was a proposed ordinance authorizing Dooley to execute a lease with DCB for the Bissell Property. The Council unanimously passed Bill No. 362,2004, which thereafter became Ordinance No. 22,050,2004 (the Ordinance) and provided as follows:

AN ORDINANCE AUTHORIZING THE COUNTY EXECUTIVE TO EXECUTE A LEASE WITH THE DIVISION CAVALRY BRIGADE FOR LEASE OF THE BISSELL HOUSE AND PARK GROUNDS AT 10225 BELLEFONTAINE ROAD.

BE IT ORDAINED BY THE COUNTY COUNCIL OF ST. LOUIS COUNTY, MISSOURI, AS FOLLOWS:

SECTION I. The County Executive on behalf of St. Louis County, Missouri, is authorized to execute a lease with The Division Calvary Brigade, a Missouri non-profit corporation ("DCB").

SECTION 2. The lease authorized in Section 1 shall provide for St. Louis County to lease to DCB the General Daniel Bissell House and park grounds located at 10225 Bellefontaine Road for a term of twenty-five years. The lease shall further provide for a rental rate of One Dollar per year ($1.00/yr.) for years 1 through 3 of the term, and thereafter,

for DCB to compensate County an amount equal to five percent (5%) of the annual gross income generated by DCB through management and operation of the Bissell House. The said leased area shall include all buildings and the surrounding 9.3 acres of grounds identified by Locator No. 10E440335. The said lease shall further provide for DCB to make approximately $1,200,000.00 of building improvements during the first five years of the lease; for DCB to provide overall site maintenance; and for such other term and conditions as are approved by the County Counselor.

On October 20, 2004, Dooley signed the Ordinance into law.

On November 3, 2004, Poling sent DCB a letter serving "as a letter of St. Louis County's intent to enter into a lease agreement with [DCB] for the lease of the structures and grounds of the [Bissell Property] currently operated by the Park's Department." Poling's letter also stated:

We recommend that you go forward with making your own reservations for the Bissell site for anytime after January 1, 2005 with a 30–day no penalty cancellation clause for your protection. We fully anticipate that the lease will be completed by that time.

St. Louis County subsequently provided DCB with the keys and unrestricted access to the Bissell property while the proposed lease agreement was being drafted and reviewed by St. Louis County. Meanwhile, DCB obtained volunteers, who helped to make some repairs to the Bissell Property.

On November 19, 2004, Poling e-mailed to DCB the Final Lease Agreement containing all of the terms acceptable to the parties. Dooley had not reviewed the Final Lease Agreement. Neither Dooley nor any other St. Louis County representative had signed the Final Lease Agreement. On November 20, 2004, DCB signed and dated the Final Lease Agreement and returned it to St. Louis County two days later. However, Dooley never signed the Final Lease Agreement. On December 8, 2004, St. Louis County took possession of the Bissell Property and thereafter refused to allow DCB to possess the Bissell Property.

DCB later filed its petition alleging that DCB and St. Louis County had entered into a lease agreement for the Bissell Property by virtue of the Ordinance, which Dooley had signed into law, and the Final Lease Agreement, which DCB had signed and had returned to St. Louis County. DCB alleged that St. Louis County breached the lease agreement and DCB had sustained damages as a result due to the loss of grants, loans, contracts, and income. St. Louis County subsequently filed its motion for summary judgment, and DCB filed a motion for partial summary judgment, then a cross-motion for summary judgment. After a hearing on the motions, the trial court granted St. Louis County's motion for summary judgment and denied both of DCB's motions for summary judgment. In its judgment, the trial court found that DCB had failed to produce a lease that complied with Section 432.070 [1] because the Final Lease Agreement was not "subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing" in that Dooley had not executed the Final Lease Agreement pursuant to the authority granted him by the Ordinance. The trial court further found that no St. Louis County representative other than Dooley was authorized to sign any document for the purpose of executing a lease with DCB. This appeal follows.

---

1. All statutory references are to RSMo. 2000, unless otherwise indicated.

## Standard of Review

■ Whether the trial court's grant of summary judgment was proper is a question of law that we review *de novo*. *Todd v. Missouri United School Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007); *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is proper when the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Rule 74.04(c); *Todd*, 223 S.W.3d at 160. Where the defending party is the movant, it may establish a right to judgment by showing: 1) facts negating any one of the non-movant's elements facts; 2) that the non-movant, after an adequate period of discovery, has not been able and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the non-movant's elements; or 3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *ITT*, 854 S.W.2d at 381. We review the record in the light most favorable to the party against whom summary judgment was entered. *ITT*, 854 S.W.2d at 376.

## Points I, III, and V

Because DCB's first, third, and fifth points all concern whether there was substantial compliance with the signed writing requirement under Section 432.070, we address those points together. DCB claims the trial court erred in granting St. Louis County's motion for summary judgment because the undisputed facts established there was substantial compliance with Section 432.070 in that: the Ordinance itself constituted a lease since it contained all of the terms agreed upon by the parties, was approved by the Council, and was signed by Dooley; and, even though Dooley did not sign the Final Lease Agreement, there existed a series of writings between DCB and St. Louis County containing all the terms of the Final Lease Agreement and signed by Dooley, which constituted a valid and binding contract. We disagree.

Section 432.070 states:

No county, city, town, village, school township, school district, or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.

■ To be enforceable, a contract with a municipal corporation must comply with the mandatory statutory provisions of Section 432.070. *Veling v. City of Kansas City*, 901 S.W.2d 119, 121 (Mo.App. W.D. 1995); *City of Fenton v. Executive Intern. Inn, Inc.*, 740 S.W.2d 338, 340 (Mo.App. E.D.1987). Contracts not so executed are not enforceable. *See Vigran v. Poelker*, 433 F.Supp. 168, 170 (D.C.Mo.1977) (lease for property executed by property owner and city employee not enforceable against city where no ordinance authorized such lease and signature of city's comptroller or mayor did not appear on lease). However, in certain circumstances, substantial compliance with Section 432.070 may be sufficient to create a valid and enforceable contract. *Veling*, 901 S.W.2d at 124; *Lynch v. Webb City School Dist. No. 92*, 418 S.W.2d 608, 615 (Mo.App. S.D.1967). Furthermore, a contract with a municipality need not be contained in one writing. *Sorkin v. City of St. Clair*, 800 S.W.2d 817,

818 (Mo.App. E.D.1990). Even so, for the writings to constitute a valid contract, both parties must communicate their agreement to its terms to the other and be bound thereby. *See Wiseman v. Junior College District of St. Louis,* 916 S.W.2d 267, 269 (Mo.App. E.D.1995).

Here, St. Louis County was entitled to summary judgment as a matter of law because, even though we view the record in the light most favorable to DCB, as our standard of review requires, there existed no contract satisfying the requirements of Section 432.070 between DCB and St. Louis County, and DCB did not provide evidence of substantial compliance with Section 432.070.

■ First, it is undisputed that Dooley never signed the Final Lease Agreement. However, contrary to DCB's argument, Dooley's signature on the Ordinance did not constitute substantial compliance with Section 432.070. By signing the Ordinance, Dooley only accepted the authority granted him by the Council to execute a lease with DCB at some undetermined time in the future. In fact, the Final Lease Agreement had not even been drafted at the time the Ordinance was enacted. The Ordinance merely authorized, or empowered, Dooley to enter into a lease with DCB on behalf of St. Louis County. *See Moynihan v. Gunn,* 204 S.W.3d 230, 234 (Mo.App. E.D.2006) (using principles of statutory construction, we ascertain legislative intent from the language used and consider the words in their plain and ordinary meaning, even when construing a city ordinance); Black's Law Dictionary (8th ed.2004) ("authorize" means to empower, to formally approve, to sanction). *See also* 10 Eugene McQuillan, The Law of Municipal Corporations, Section 29.03 at 247 (3rd ed.1999) (ordinance or resolution authorizing mayor or other officers to enter contract does not itself create contract if not acted upon). Furthermore, the Ordinance itself did not represent a final incorporation of the parties' assent to an agreement. While the Ordinance mentioned some basic terms that were contained in the Final Lease Agreement, such as the location of the Bissell Property, the amount of rent, and the length of the proposed lease, the Ordinance did not contain other terms that were included in the Final Lease Agreement, such as which party would be responsible for the payment of taxes and assessments, which party would be responsible for liability insurance, and detailed restrictions on use and occupancy. Notably, the Ordinance did not grant DCB any rights or privileges that would accrue upon the mere signing of the Ordinance and, thus, create a contract. The Ordinance was only the initial step toward the parties entering into a lease, and the plain language of the Ordinance clearly indicated that an additional step was necessary before St. Louis County could be obligated to a lease with DCB, i.e., a lease would have to be signed by Dooley.

■ Second, although the record contains letters signed by Swanick and Dooley discussing some of the terms contained in the Final Lease Agreement, the letters cannot be combined to constitute substantial compliance with Section 432.070. Those letters predated the Ordinance and merely requested legislation to enable St. Louis County to enter into a lease agreement with DCB. Notably, none of the letters signed by St. Louis County officials appearing in the record, particularly the letter of intent sent to DCB by Poling, were intended to be considered lease agreements. Although Poling's letter was sent after the Ordinance was enacted and indicated an agreement between the parties was imminent, Poling's letter was clearly labeled a "Letter of Intent for Bis-

sell Property Lease." Moreover, Poling's letter, dated November 3, 2004, indicated that St. Louis County did not yet believe a lease was in effect because it suggested that DCB make preparations to operate the Bissell Property any time *after* January 1, 2005.

Accordingly, the trial court did not err in granting summary judgment to St. Louis County on the ground that there existed no enforceable lease agreement between the parties. DCB's first, third, and fifth points are denied.

### Point II

In its second point on appeal, DCB claims the trial court erred in granting St. Louis County's motion for summary judgment because Dooley's signature was not necessary in that the Council authorized the lease through the Ordinance, and the Council, as the governing body of St. Louis County, was the only entity with the power and authority under the St. Louis County Charter to rent or lease properties owned by St. Louis County. DCB argues that once Dooley signed the Ordinance into law, Dooley had no power, authority, or discretion to refuse to sign the Final Lease Agreement because he simply had been appointed as the person to affix a signature to the Final Lease Agreement. We disagree.

We determine, on a case-by-case basis, whether an act by an official is discretionary or ministerial by looking at the degree of reason and judgment required to perform the act. *Rush v. Senior Citizens Nursing Home Dist. of Ray County*, 212 S.W.3d 155, 160 (Mo.App. W.D.2006). A discretionary act is one that requires the exercise of reason and discretion to determine how or whether to act or whether a particular course should be pursued. *Id.; Jackson v. Wilson*, 581 S.W.2d 39, 43 (Mo.App. W.D.1979). A ministerial act is one that a public official is required to perform upon a given state of facts, in a prescribed manner, in obedience with the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed. *Charron v. Thompson*, 939 S.W.2d 885, 886 (Mo. banc 1996); *Warren v. State*, 939 S.W.2d 950, 953 (Mo.App. W.D.1997). We also weigh such factors as the nature of the official's duties and the extent to which the acts involve policymaking or the exercise of professional expertise and judgment. *Charron*, 939 S.W.2d at 886.

Article II, Section 2.180 of the St. Louis County Charter states, in pertinent part:

Pursuant to and in conformity with the Constitution of Missouri and without limiting the generality of powers vested in the council by this charter, the council shall have, by ordinance, the power to

. . .

8. Rent or lease county properties and rent or lease other property for county use;

. . .

35. Make all necessary and proper provision for carrying into execution the foregoing powers directly or by and through county officers and employees[.]

The County Executive shall be responsible for the proper and efficient administration of such affairs of St. Louis County as are placed in his charge or under his jurisdiction or control by the St. Louis County Charter, law, or ordinance. ST. LOUIS COUNTY CHARTER, Art. III, Section 3.040. Article III, Section 3.050 of the St. Louis County Charter further provides that, in addition to the other powers and duties enumerated therein, the County Executive shall:

5. Execute and enforce the provisions of this charter, the laws of the state pertaining to the government of the

county, and the ordinances, resolutions, orders and policies of the council; see that all contracts with the county are faithfully performed and cause to be instituted in the name of the county appropriate actions thereon;

. . .

10. Represent the county and perform such other duties as may be prescribed by this charter or by law or be required of him by ordinance or resolution of the county or as may be necessarily implied by the powers and duties herein specified[.]

Here, given the facts of this case, we conclude that the act of not signing the Final Lease Agreement was discretionary. The plain language of the Ordinance indicated that the Council, through the Ordinance, was delegating to Dooley the power to use reason and judgment in deciding whether to enter into a lease with DCB. The Ordinance did not order, direct, or require Dooley to sign a lease with DCB and did not declare that Dooley was under a duty to sign such a lease. The Ordinance was the instrument, necessary under the St. Louis County Charter, by which the Council delegated its power to rent St. Louis County property by naming Dooley the duly-appointed official or agent of St. Louis County with the power to enter into a lease with DCB. *See* Section 432.070; ST. LOUIS COUNTY CHARTER Art. III, Section 3.050.10. By deciding not to sign the Final Lease Agreement, Dooley simply exercised his professional expertise and judgment as County Executive, which the Ordinance allowed him to do. Point denied.

## *Point IV*

In its fourth point on appeal, DCB claims the trial court erred in granting St. Louis County's motion for summary judgment due to the lack of Dooley's signature on the Final Lease Agreement because there existed a question of material fact as to whether Swanick executed or could have executed the Final Lease Agreement on behalf of St. Louis County.

DCB's claim is without merit. First, the record reveals that the Final Lease Agreement was signed only by DCB's representative, Terry Crowder. No signature of a St. Louis County representative appeared on the document, and DCB was unable to produce a copy of the Final Lease Agreement bearing the signature of any St. Louis County official or employee. Second, even if Swanick had signed the Final Lease Agreement, the Ordinance only authorized Dooley to execute a lease with DCB on behalf of St. Louis County. Swanick was not authorized to execute such a lease. Consequently, we agree with St. Louis County's position that whether Swanick signed the Final Lease Agreement is immaterial because only Dooley was authorized to sign it and, thereby, execute a lease with DCB. Furthermore, although Swanick's signature appeared on her letter addressed to Dooley requesting that legislation be enacted to authorize a lease with DCB, that letter predated the Ordinance, was merely a request for legislation, and could not be characterized as an execution of a lease. Point denied.

## *Conclusion*

The trial court did not err in granting summary judgment in favor of St. Louis County. The trial court's judgment is affirmed.

BOOKER T. SHAW, Presiding Judge, and KATHIANNE KNAUP CRANE, Judge, concur.