Gerald NORTON and Janet Norton,
Plaintiffs–Appellants,

v.

Leland SMITH, Defendant–Respondent.

No. 56421.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 5, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 3, 1990.

Application to Transfer Denied
Feb. 13, 1990.

Robert J. Radice, St. Louis, for plaintiffs-appellants.

William L. Webster, Atty. Gen., Gary L. Gardner, Asst. Atty. Gen., Jefferson City, for defendant-respondent.

HAMILTON, Presiding Judge.

Appellants, Gerald Norton (hereinafter Norton), a police officer in Cincinnati, Ohio, and his spouse, Janet Norton, appeal from a summary judgment entered in favor of

Respondent, Leland Smith (hereinafter Smith), a probation and parole officer employed by the State of Missouri in the City of St. Louis. Norton and his wife had filed a personal injury action against Smith after Norton was shot while on duty on April 15, 1987, in Cincinnati by Melvin Moreland (hereinafter Moreland). At the time of the shooting, Smith was Moreland's parole officer. Smith moved for summary judgment, which the trial court sustained. We affirm.

On July 8, 1986, Smith began supervision of Moreland who was on parole to the Board of Probation and Parole of the Department of Corrections and Human Resources of Missouri (hereinafter Board) for the offenses of unlawful use of a weapon and resisting arrest. Included among the conditions of Moreland's parole were requirements that he (1) report for regular meetings with his parole officer; (2) notify his parole officer of any change of residency within forty-eight hours; (3) obtain permission of his parole officer before leaving the state or area in which he was living; (4) maintain employment unless engaged in a specific program approved by his parole officer. Although the Board established the conditions of parole, the supervising parole officer determined the frequency of meetings with the parolee. Smith required Moreland to report to him monthly.

On March 17, 1987, Moreland failed to appear at his scheduled appointment with Smith. On April 6, 1987, Smith telephoned Moreland's residence and spoke to his mother. She informed him that Moreland continued to reside with her only periodically and that he was no longer employed. Because she gave no indication, however, that Moreland had left the St. Louis area, Smith believed Moreland to be in the vicinity of St. Louis. Smith's clients not infrequently stayed with parents during a part of the week, spending the remaining time with others.

On April 15, 1987, in Cincinnati, Ohio, Cincinnati police officers Gerald Norton and Clifford George, while on duty, responded to a police dispatch. In so doing, they encountered Moreland and attempted to arrest him. During the attempted arrest, Moreland fatally shot Officer George and wounded Officer Norton. Prior to the police officers' arrival at the scene of the shooting, the Cincinnati police had checked Moreland's name in the police computers but found no record of a probation or parole violation for Moreland.

Thereafter, Norton and his spouse filed their petition, which they later amended. In Count I of the Second Amended Petition, Norton sought damages for injuries allegedly caused when Smith negligently failed to fulfill his non-discretionary/ministerial duties. It averred that Smith owed a duty to Officer Norton to report any and all probation and parole violations of Moreland and to issue an arrest warrant for him. Specifically, Count I alleged that Smith negligently failed (1) to report Moreland's failure to appear for scheduled parole meetings prior to April 15, 1987; (2) to report that Moreland left Missouri prior to April 15, 1987; (3) to take proper steps to secure Moreland's return to Missouri prior to April 15, 1987; and (4) to notify local police in Cincinnati that Moreland had relatives in the Cincinnati area. In Count II, Norton's spouse sought damages for loss of consortium caused by the negligent acts specified in Count I.

Following Smith's answer to the Second Amended Petition, the parties proceeded with discovery, taking the deposition of Smith during which portions of the Missouri Board of Probation and Parole Policy Manual (hereinafter Policy Manual) were identified and marked as an exhibit. Smith then filed a motion for summary judgment, which the trial court sustained. This appeal ensued.

On appeal, the Nortons contend the trial court erred in entering summary judgment because Smith had a ministerial duty to take steps to secure the return of Moreland. Initially, we note that summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, if any, demonstrate no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 74.-

04(c). While, in reviewing a summary judgment, we must scrutinize the record in the light most favorable to the party against whom it was entered, we must also sustain a summary judgment if it is sustainable on any theory. *Alfano v. AAIM Management Ass'n,* 770 S.W.2d 743, 745 (Mo.App.1989).

■ To be liable in tort for his or her official acts, a public official or employee must breach a ministerial duty imposed by statute or by regulation. The public duty doctrine recognizes that public officers normally owe a duty only to the general public, not to individuals. Thus, breach of a duty owed by a public official only to the general public will support no cause of action brought by an individual who is injured thereby. *State ex rel. Twiehaus v. Adolf,* 706 S.W.2d 443, 445 (Mo. banc 1986). A public official, however, is liable to an individual for his failure to perform a ministerial duty imposed on him by statute when that statute creates a duty to the individual. *Id.* At a minimum, the would-be plaintiff must be a member of a class for whose benefit the statute was enacted. *Sherrill v. Wilson,* 653 S.W.2d 661, 669 (Mo. banc 1983). Moreover, courts are reluctant to find an implied right to a civil action in a statute that fails expressly to refer to civil liability. *Id.* Liability attaches, therefore, when the law imposes upon the public officer the performance of ministerial duties in which a private individual has a special, direct, and distinctive interest and the breach of such duties cause injury. *State ex rel. Barthelette v. Sanders,* 756 S.W.2d 536, 538 (Mo. banc 1988). The rationale behind the public duty doctrine is thus twofold: to protect modestly compensated public employees against multifarious claims and to allow them to perform the task at hand without suffering inappropriate distractions. *Green v. Denison,* 738 S.W.2d 861, 866 (Mo. banc 1987).

■ Like the public duty doctrine, the official immunity doctrine may shield from tort liability public officers acting within the scope of their authority. That doctrine exempts such public officers from liability for injuries arising from their discretionary acts or omissions, but imposes liability for torts committed when they act in a ministerial capacity. *Barthelette,* 756 S.W.2d at 537. Society's compelling interest in the vigorous and effective administration of the public's affairs underlies the doctrine of official immunity. *Id.* at 538.

■ In the instant case, Section 217.-720.1 governs the reporting of parole violations and the issuance of a warrant for the arrest of a parole violator. That section provides that

> [a]t any time during release on parole or conditional release the board may issue a warrant for the arrest of a released inmate for violation of any of the conditions of parole or conditional release.... Any parole or probation officer may arrest such inmate without a warrant or may deputize any other officer with power of arrest to do so by giving him a written statement setting forth that the inmate has, in the judgment of the parole or probation officer, violated the conditions of his parole or conditional release....

The language of the statute neither requires the reporting of parole violations nor the issuance of arrest warrants for such violations. Thus, this statute neither creates nor imposes a ministerial duty on the part of the Board or of parole officers. Similarly, no such duty to report or to issue warrants is imposed by the implementing state regulation:

> An alleged parole or conditional release violator may be arrested by any probation and parole officer, or anyone s/he may deputize to do so, when in the judgment of the officer the parolee or conditional releasee has violated the conditions of parole or conditional release. A statement in writing is given to the arresting officer. A written copy of the alleged violations is furnished to the detaining authority.

14 Mo. CSR 80–4.010(1).

Nor are we persuaded that the relevant portions of the Policy Manual impose such ministerial duties owing to individuals. According to that manual, an "initial violation report shall be submitted to the proper

authorities within 10 working days from the date the violation became known." In addition, no violation report is required when the violation involves "not following the directives of the supervising officer."

■ To the extent one can argue that the Policy Manual imposed a duty on Smith as a parole officer to report the violation by Moreland of condition 2 (to notify the parole officer of a change in residence), or condition 3 (to obtain permission of the parole officer before leaving the state or area in which he was living), or condition 4 (to maintain employment), that duty to report was owed to the "proper authorities," that is to say, to the State of Missouri and not to individuals such as Norton.

We find, however, that the foregoing provisions of the Policy Manual are directory rather than mandatory. That is because when a statute or administrative regulation provides "what results shall follow from a failure to comply with its terms, it is mandatory and must be obeyed, whereas, if it merely requires certain things to be done and nowhere prescribes the results that shall follow if such things are not done, the statute is merely directory." *Meloy v. Reorganized School Dist. R–1 of Reynolds County,* 631 S.W.2d 933, 937 (Mo.App.1982) (quoting *Hedges v. Department of Social Serv.,* 585 S.W.2d 170, 172 (Mo.App.1979)). Therefore, we hold that those provisions of the Policy Manual impose no ministerial duty upon parole officers to report violations of conditions 2, 3, or 4.

Moreover, the Policy Manual exempts a parole officer from any requirement to report a violation involving the failure to follow the directions of the supervising officer. Thus, by the terms of the Policy Manual, Smith was under no duty to report Moreland's failure to appear at scheduled parole meetings.

The Policy Manual also fails to impose a ministerial duty on parole officers to issue parole warrants. The Manual requires issuance of such a warrant only when the parole officer decides to recommend revocation of parole. He might also recommend delayed action or continuance, in which case no warrant issues. In any case,

the language of the Manual manifests no duty to issue warrants.

The Policy Manual does provide that "[w]hen a supervising officer has determined the client to be an absconder, he must either a) issue a warrant for the client's arrest, or b) recommend to the sentencing court that the court's warrant be issued." It defines an absconder as "a client under supervision who has left his place of residency without the permission of his supervising officer and whose whereabouts is unknown to that officer." Like the provisions of the Policy Manual discussed earlier, the provisions relating to issuance of warrants to apprehend absconders are directory rather than mandatory. *Meloy, supra,* 631 S.W.2d at 937. As such, they impose no ministerial duty upon parole officers to issue warrants.

Finally, although the Nortons alleged a ministerial duty by Smith to notify the local police in Cincinnati that Moreland had relatives in the Cincinnati area, neither the statute, nor the regulations, nor the Policy Manual contains such a duty.

Norton has failed to aver the existence of a ministerial duty owing to him individually that is mandated either by statute, regulation, or Board policy. Moreover, we find no such duty in the relevant statute, regulation, or Board policy. Smith owed no ministerial duty to Norton to report parole violations or to issue arrest warrants. To the extent, if any, that Smith had such duties, we hold they were owed to the public generally, not to individuals and thus were not actionable. The trial court therefore committed no error in granting summary judgment in favor of Smith. In view of our holding, we need not reach the issue of whether summary judgment was proper under the doctrine of official immunity.

Judgment affirmed.

CARL R. GAERTNER and STEPHAN, JJ., concur.