James BOEVER and Cheryl Boever,
Plaintiffs/Appellants,

v.

SPECIAL SCHOOL DISTRICT OF SAINT LOUIS COUNTY, Michael Laspe, Jeanie Wolf, and Stacy Durham, Defendants/Respondents.

No. ED 92698.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 22, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 16, 2009.

Dana Hockensmith, Jeffrey Damerall, St. Louis, MO, for appellants.

Elizabeth C. Carver, Charles B. Jellinek, Travis R. Kearbey, Bryan Cave LLP, St. Louis, MO, for respondents.

KATHIANNE KNAUP CRANE, Presiding Judge.

Plaintiffs filed a lawsuit against a school district and three of its employees seeking damages for the wrongful death of their son. The school district filed a motion to dismiss on the ground of sovereign immunity, and the employees moved to dismiss on the ground of official immunity. The trial court sustained the motions. Plaintiffs appeal. We affirm.

### PROCEDURAL BACKGROUND

The petition contained the following allegations. Plaintiffs, James and Cheryl Boever, were the parents of Nicholas Boever (the child). The child enrolled at defendant Special School District of Saint Louis County (SSD) in 2002. SSD had liability insurance coverage for "the acts of negligence and misconduct" described in the petition. At the time the child enrolled in SSD, SSD "was placed on notice" that the child suffered from "severe functional limitations and medications that caused him to be a danger to himself and others," such as "inappropriate sensory seeking propensities, mental retardation, autism, speech deficiency, physical limitations, pica, and related eating disorders that caused him to seek out and choke, gag and overfill his mouth with edible food and inedible objects."

In September 2007, defendant Michael Laspe was the child's homeroom teacher, and defendants Jeanie Wolf and Stacy Durham were the child's classroom aides. Plaintiffs alleged that defendants had actual or constructive notice that the child required constant supervision, could fatally injure himself or choke to death, and "could not be left unsupervised with food or inedible objects in or near his reach, and that leaving him in such a situation would pose an immediate danger to his health, safety, wellbeing and life." In addition, plaintiffs alleged that defendants were obligated to provide the child "individually with constant[ ] care, supervision, monitoring, and physical assistance, as well as a safe learning environment."

Plaintiffs specifically alleged:

16. On September 5, 2007, Defendant SSD, Defendant Wolf and Defendant Durham failed to supervise or monitor [the child] while he had access to food, and were reckless and negligent in so doing.

17. The decision of Defendants regarding whether or not to monitor or supervise [the child] was not discretionary in nature; they had an unqualified duty to provide him with constant care, supervision and monitoring.

18. Under the above circumstances, the state and condition of the classroom was dangerous, as its purpose was to serve students with physical, mental and sensory disabilities such as [the child's], and open and unattended food was left on its premises without adequate warnings, barriers or preventative measures in place.

19. Defendants created the dangerous condition of the property through their negligence and had actual or con-

structive notice that the state of the classroom posed a foreseeable risk of injury or death to [the child] and other students.

Plaintiffs alleged that during the time these conditions existed on September 5, 2007, the child ate food left within his reach or nearby and began choking, which led to the child's death on September 12, 2007. Plaintiffs alleged in the alternative that defendants provided the child with food "soon or immediately after" defendants learned that the child had eaten food too quickly or had experienced a choking episode.

## DISCUSSION

Our review of a dismissal for failure to state a claim for which relief can be granted is *de novo*. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 768 (Mo. banc 2007). In conducting this review, we accept all properly pleaded facts as true, we give the pleadings their broadest intendment, and we construe all allegations favorably to the pleader, in order to determine whether the averments invoke principles of substantive law entitling the plaintiff to relief. *Bachtel v. Miller County Nursing Home Dist.*, 110 S.W.3d 799, 801 (Mo. banc 2003). " 'A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition.' " *Hess*, 220 S.W.3d at 768 (quoting *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 464 (Mo. banc 2001)). We examine the petition simply to determine whether the alleged facts meet the elements of a recognized cause of action, or of a cause of action that might be adopted in a particular case. *Bosch*, 41 S.W.3d at 463–64 (citing *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306

(Mo. banc 1993)). However, we do not accept a pleader's conclusions. *Howard v. Youngman*, 81 S.W.3d 101, 119 (Mo.App. 2002).

█ This case involves tort claims against a public entity and its employees. "The liability of a public entity for torts is the exception to the general rule of immunity for tort and it is incumbent upon a plaintiff who seeks to state a claim for relief to specifically allege facts establishing that an exception applies." *Best v. Schoemehl*, 652 S.W.2d 740, 743 (Mo.App. 1983). *See also Hummel v. St. Charles City R–3 School Dist.*, 114 S.W.3d 282, 284 (Mo.App.2003).

## I. Official Immunity

█ For their first point, plaintiffs assert that the trial court erred in dismissing their claims against the individual defendants because the individual defendants are not protected by official immunity, in that "they did not have or use any discretion in their treatment of [the child] and failed to carry out their ministerial duties." [1]

█ The judicially-created doctrine of official immunity "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008). "Official immunity is intended to provide protection for individual government actors who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties." *Id.* at 611. "Its goal is also to permit public employees to make judg-

---

1. All of the points relied on are defective in that they fail to identify the allegations in the petition that demonstrate that official or sovereign immunity does not apply. Points relied on must identify the key facts that were pleaded that would trigger or authorize the relief requested. *Vestin Realty Mortg. I. v. Pickwick Partners*, 279 S.W.3d 536, 539–40 (Mo.App.2009).

ments affecting public safety and welfare without concerns about possible personal liability." *Id.*

 However, the official immunity doctrine "does not provide public employees immunity for acts committed when acting in a ministerial capacity." *Id.* at 610. A ministerial function is one " 'of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.' " *Id.* (quoting *Kanagawa v. State By and Through Freeman,* 685 S.W.2d 831, 836 (Mo. banc 1985)). This reference to "the mandate of legal authority" is a reference to a duty imposed by statute or regulation. *See Brummitt v. Springer,* 918 S.W.2d 909, 912 (Mo.App. 1996).

 To be liable for official acts, a public official or employee must breach a ministerial duty imposed by statute or regulation. *Id.*; *Clay v. Scott,* 883 S.W.2d 573, 575–76 (Mo.App.1994); *Scher v. Purkett,* 847 S.W.2d 76, 78 (Mo.App.1992); *Norton v. Smith,* 782 S.W.2d 775, 777 (Mo. App.1989). In addition, in order to prescribe a ministerial duty, the statute or regulation must be mandatory and not merely directory. *Brummitt,* 918 S.W.2d at 912–13. Further, the statute or regulation must mandate a ministerial, not a discretionary, action. *Id.* at 913. *See also Warren v. State,* 939 S.W.2d 950, 953–4 (Mo.App.1997); *Norton,* 782 S.W.2d at 777–78; *Clay,* 883 S.W.2d at 576. Absent allegations averring the existence of a statutory or departmentally-mandated duty and a breach of that duty, a petition fails "to state a claim that is not barred by the doctrine of official immunity as a matter of law." *State ex rel. Twiehaus v. Adolf,* 706 S.W.2d 443, 446 (Mo. banc 1986).

In this case, plaintiffs did not allege the existence or breach of any statutory or regulatory duty, and therefore have not alleged facts establishing that an exception to the official immunity doctrine applies. The issue they do raise, whether the duty to give constant, individualized supervision is ministerial or discretionary, is not one we would reach if there is no allegation that the duty had been imposed by statute or regulation. *See Brummitt,* 918 S.W.2d at 912.

 In addition, plaintiffs' argument that the individual defendants' failure to act was not an exercise of discretion does not support their conclusion that this failure became ministerial. In the first place, as we have already set out, an act cannot be characterized as ministerial if it does not meet the requirement that the act be mandated by statute or regulation. Secondly, our courts have rejected the argument that a failure to act is not an exercise of discretion. *Miller v. Smith,* 921 S.W.2d 39, 46 (Mo.App.1996). "The doctrine of official immunity applies not only to discretionary acts and functions, but also to omissions." *Id.* "Discretion involves both the decision to take action and the decision to do nothing." *Id.*

Plaintiffs failed to allege a breach of a statutory or regulatory duty. Therefore, they have not stated a claim for breach of a ministerial duty falling within an exception to the official immunity doctrine. The trial court did not err in granting the individual defendants' motion to dismiss on the ground of official immunity.[2] Point one is denied.

---

**2.** Plaintiffs make two additional arguments in their argument under this point that are not encompassed by the point relied on. For this reason, they are not preserved for our review. *Hutchings v. Roling,* 193 S.W.3d 334, 346 (Mo.App.2006).

## II. *Waiver of Sovereign Immunity—Dangerous Condition*

▮ For their second point, plaintiffs assert that the trial court erred in dismissing its cause of action on the basis of sovereign immunity, because SSD "waived its immunity by creating a dangerous condition in its classroom or having notice of a dangerous condition in its classroom and failing to make the classroom safe reasonably soon thereafter."

After *Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977), abrogated sovereign immunity as a defense in this state, the Missouri legislature reinstated a modified form of sovereign immunity. Section 537.600 RSMo (1977), now RSMo 2000 and RSMo 2007 Supp.; *Southers*, 263 S.W.3d at 609 n. 5. However, this statute expressly waives sovereign immunity in two situations—for injuries resulting from negligent acts or omissions arising out of the operation of a motor vehicle by a public employee in the course of employment and for injuries resulting from the dangerous condition of public property. *Id.* at 609. The statute specifically describes injuries resulting from the dangerous condition of public property as those

> [i]njuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Section 537.600.1(2) RSMo (2000).[3]

▮ We must strictly construe these statutory waiver provisions. *McNeill Trucking Co., Inc. v. MHTC*, 35 S.W.3d 846, 848 (Mo. banc 2001); *Maune ex rel. Maune v. City of Rolla*, 203 S.W.3d 802, 805 (Mo.App.2006).

▮ In order for property to be "dangerous" within the narrow exception provided by section 537.600.1(2), it must exhibit a defect that is physical in nature. *Div. of Motor Carr. & R.R. Safety v. Russell*, 91 S.W.3d 612, 616 (Mo. banc 2002). "[T]he dangerous condition must 'describe, define, explain, denote or reference only and exclusively the physical defects in, upon and/or attending to property of the public entity.'" *Id.* (quoting *Twente v. Ellis Fischel State Cancer Hospital*, 665 S.W.2d 2, 12 (Mo.App.1983)). Physical defects include both defects in the physical condition of public property and physical deficiencies created by the placement of objects on the public property. *Alexander v. State*, 756 S.W.2d 539, 541–42 (Mo. banc 1988). "Failure to perform an intangible act, whether it be failure to supervise or warn[,] cannot constitute a dangerous 'condition' of the 'property' for purposes of waiving sovereign immunity." *Russell*, 91 S.W.3d at 616. *See also Necker by Necker v. City of Bridgeton*, 938 S.W.2d 651, 655 (Mo.App.1997). Likewise, a lack of warnings, barriers, or similar preventative measures do not constitute a dangerous condition under the statute. *See Thompson v. City of West Plains*, 935 S.W.2d 334, 339 (Mo.App.1996).

Plaintiffs alleged that "the condition of the classroom was dangerous" because "open and unattended food was left on [SSD's] premises without adequate warn-

---

**3.** All further statutory references are to RSMo (2000).

ings, barriers or preventative measures in place." They further alleged that "[d]uring the period of time that [defendants] neglected to provide [the child] with preventative measures, barriers, supervision, or monitoring, [the child] ate food that was left within his reach or nearby him." These allegations allege only a lack of supervision and a lack of warnings, barriers, and similar preventive measures. These situations do not constitute a dangerous condition within the meaning of section 537.600.1(2).

Plaintiffs did not specifically plead facts, as required, that stated a claim within the dangerous condition exception to sovereign immunity. The trial court did not err in granting SSD's motion to dismiss on the ground of sovereign immunity. Point two is denied.

### III. *Waiver of Sovereign Immunity–Insurance*

For their third point, plaintiffs contend that the trial court erred in dismissing their claim against SSD because "SSD is not entitled to Sovereign Immunity in that its liability insurance policy provides coverage for the liabilities alleged in the petition and SSD therefore waived its immunity."

Section 537.610.1 provides that a public entity can waive sovereign immunity by the purchase of insurance covering the claims at issue. This section provides an "independent basis for waiving sovereign immunity—a basis cemented in the existence of coverage for the damage or injury at issue under the language of the insurance policy." *State ex rel. Cass Medical Ctr. v. Mason,* 796 S.W.2d 621, 624 (Mo. banc 1990).

Plaintiffs alleged that defendants had liability insurance coverage for the acts of negligence and misconduct "described" in the petition. They did not allege any spe-

cific provisions of the policy or attach the policy. In their brief, however, plaintiffs acknowledge that the policy contains an endorsement that excludes coverage for acts that fall within the insured's sovereign immunity. Plaintiffs do not dispute that this endorsement prevents waiver of SSD's sovereign immunity. *See Amick v. Pattonville–Bridgeton Terrace Etc.,* 91 S.W.3d 603, 604–05 (Mo. banc 2002).

Instead, plaintiffs propound a theory from which they conclude that SSD can still be liable because it has liability insurance even though the policy contains this endorsement. SSD has raised multiple procedural and substantive challenges to this theory. However, we do not need to reach these challenges because plaintiffs' theory, as they describe it, requires that the individual defendants have no official immunity. Since we have rejected the claim that the individual defendants had no official immunity in our discussion under point one, plaintiffs' theory, as they have framed it, has no viability. Point three is denied.

### Conclusion

The judgment of the trial court is affirmed.

CLIFFORD H. AHRENS, J. and NANNETTE A. BAKER, J., concur.