

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

PATRICIA NOWELL-SILMAN,

    Appellant,

vs.

MISSOURI DEPARTMENT OF PUBLIC
SAFETY VETERANS' COMMISSION
D/B/A MISSOURI VETERANS' HOME,

    Respondent.

)  No. ED112005
)
)  Appeal from the Circuit Court of
)  Cape Girardeau County
)
)  Honorable Benjamin F. Lewis
)
)
)
)
)
)
)  Filed: August 20, 2024

### Introduction

Patricia Nowell-Silman ("Appellant") appeals the circuit court's judgment dismissing her amended petition suing for premises liability and wrongful death brought against the Missouri Department of Public Safety Veterans' Commission d/b/a Missouri Veterans' Home ("MVC") after her father ("Decedent") sustained injuries on MVC's parking lot and later died. In her sole point on appeal, Appellant argues the circuit court erred in dismissing her petition for failure to state a claim for relief because she stated a premises liability claim under section 537.600.1(2)'s sovereign immunity exception because a dangerous condition existed on MVC's property due to MVC's failure to equip its premises with coded locks and failure to equip Decedent's wheelchair or person with monitors.[1] This Court affirms the circuit court's judgment.

---

[1] All statutory references are to RSMo 2016.

**Factual and Procedural Background**

Appellant's initial petition alleged Decedent was a resident at an MVC skilled nursing facility in Cape Girardeau in May 2019.[2] Decedent was confined to a wheelchair. On June 29, 2019, Decedent was observed leaving the facility in his wheelchair without an alarm sounding, went onto the parking lot, fell from his wheelchair, and sustained injuries to the left side of his head, face, and body. Decedent was taken to the hospital, treated for his injuries, and returned to the facility. On July 2, 2019, Decedent died while under the facility's care.

Appellant filed a two-count petition against MVC alleging premises liability and wrongful death. To support the premises liability claim, the petition stated neither Decedent nor his wheelchair had a monitor to trigger an alarm if he were to leave or be taken out of the facility or the monitor on his wheelchair or person failed to work properly. The petition further stated the facility was not equipped with coded locks or other devices to prevent residents, including Decedent, from leaving the facility without supervision. The petition further alleged failing to have a monitor on the wheelchair or Decedent himself or failing to have coded locks or other devices to prevent residents from leaving the facility without supervision constituted a defective and dangerous property condition. The petition stated MVC and its employees had a duty to use the degree of reasonable care required by Decedent's "known physical and mental condition." Finally, the petition alleged Decedent suffered injuries and ultimately died as a direct and proximate result of the defective conditions on the premises.

MVC moved to dismiss the petition for failure to state a claim, arguing it was immune from liability under section 537.600. Appellant requested, and was granted, leave to file an amended petition. The amended petition alleged the facility's dangerous condition due to a lack of monitors

---

[2] The MVC "shall maintain such facilities for the care of veterans who require institutional health care services . . ." and those "facilities shall be known as 'Missouri Veterans' Homes.'" Section 42.100.1

2

and locks or malfunctioning monitors created a reasonably foreseeable risk of the kind Decedent incurred. The amended petition also stated MVC employees were negligent in creating the defective and dangerous condition. The amended petition further averred MVC knew or could have known of the dangerous and defective condition. These three amended allegations purport to address three of the four elements under section 537.600 which were omitted from the initial petition.

MVC moved to dismiss Appellant's amended petition, again arguing section 537.600 immunized it from liability because the amended petition failed to allege a physical condition which was defective and intrinsically dangerous at the facility. MVC contended Appellant failed to plead facts it waived sovereign immunity because the amended petition alleged lack of supervision and the absence of specific devices to secure an area, rather than pointing to physical defects or conditions at the facility. The circuit court sustained MVC's motion and dismissed Appellant's amended petition without prejudice for failure to state a claim upon which relief may be granted without stating the basis for its decision.

This appeal follows.[3]

**Standard of Review**

This Court reviews a circuit court's judgment on a motion to dismiss *de novo*. *R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist.*, 568 S.W.3d 420, 424 (Mo. banc 2019). "A motion to dismiss for failure to state a claim on which relief can be granted is solely a test of the adequacy of the petition." *Mo. State Conf. of NAACP v. State*, 601 S.W.3d 241, 246 (Mo. banc 2020)

---

[3] "A dismissal without prejudice generally is not a final, appealable judgment. But such a dismissal that has the practical effect of terminating the litigation is appealable." *Reddick v. Spring Lake Estates Homeowner's Ass'n*, 648 S.W.3d 765, 773 n.4 (Mo. App. E.D. 2022). Because the circuit court's judgment finding Appellant's amended petition failed to state a claim terminated the litigation, the circuit court's dismissal is an appealable judgment. *Id.*

3

(quoting *Mitchell v. Phillips*, 596 S.W.3d 120, 122 (Mo. banc 2020)). "When considering whether a petition states a claim upon which relief can be granted, the Court reviews the plaintiff's petition 'to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause of action that might be adopted in th[e] case.'" *Forester v. May*, 671 S.W.3d 383, 386 (Mo. banc 2023) (quoting *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 464 (Mo. banc 2001)). This "Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *R.M.A.*, 568 S.W.3d at 424. When a circuit court does not "state a basis for its dismissal, this Court presumes the dismissal was based on the grounds stated in the motion to dismiss." *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 391 (Mo. banc 2001).

**Discussion**

*Point I: Failure to State a Claim for Dangerous Condition*
*Party Positions*

Appellant argues the circuit court erred in dismissing her amended petition because she stated a claim for relief for premises liability under section 537.600.1(2). Appellant contends the circuit court erred in failing to find MVC's lack of monitors on Decedent and his wheelchair or lack of coded locks on doors constituted a dangerous condition on MVC's property because caselaw supports a finding a dangerous condition can result from MVC's failure to act.[4] MVC argues the circuit court properly dismissed Appellant's amended petition because the absence of monitors, coded locks, or other devices does not constitute a physical defect in public property which must be present to waive sovereign immunity under section 537.600.1(2).

---

[4] Appellant's point relied on does not challenge or explain whether the circuit court erred in finding she failed to state a claim regarding the remaining three elements to waive sovereign immunity under the dangerous condition exception. "[A]llegations of error not raised in the point relied on are waived and need not be considered." *State v. Clayborn-Muldrow*, 640 S.W.3d 491, 497 (Mo. App. E.D. 2022) (citing Rule 84.04(e)).

*Analysis*

"Sovereign immunity is a judicial doctrine that precludes bringing suit against the government without its consent.  It bars holding the government or its political subdivisions liable for the torts of its officers or agents unless such immunity is expressly waived."  *State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell*, 91 S.W.3d 612, 615 (Mo. banc 2002).  It is undisputed MVC is a public entity entitled to sovereign immunity unless it was waived.[5]

Appellant argues MVC waived its sovereign immunity under section 537.600.1, which states "the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived" in certain instances.  Relevant to this appeal, a public entity expressly waives sovereign immunity for

> [i]njuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Section 537.600.1(2).  "Whether sovereign immunity applies is a question of law."  *Hendrix v. City of St. Louis*, 636 S.W.3d 889, 900 (Mo. App. E.D. 2021).  "Statutory provisions waiving sovereign immunity are strictly construed."  *Allen v. 32nd Jud. Cir.*, 638 S.W.3d 880, 891 (Mo. banc 2022).

To establish MVC waived sovereign immunity, Appellant "must plead and prove all four elements of waiver, the first and most critical element in this case being that the 'property was in dangerous condition at the time of the injury[.]'"  *Mangum v. Webster Cnty.*, 536 S.W.3d 721, 725

---

[5] MVC is a type III state agency within the Missouri Department of Public Safety.  Section 42.007.1.

(Mo. App. S.D. 2017). In *Cain v. Missouri Highways and Transportation Commission*, 239 S.W.3d 590, 594 (Mo. banc 2007), the Supreme Court of Missouri noted *State ex rel. City of Marston v. Mann*, 921 S.W.2d 100 (Mo. App. S.D. 1996), provided an "[e]xcellent summary of the history of section 537.600.1(2)," which this Court finds instructive regarding the dangerous condition element. *Cain*, 239 S.W.3d at 594, n.5.

*Marston* explained, "[i]n Missouri, three major lines of case authority define the term 'dangerous condition' as found in section 537.600.1(2)." *Marston*, 921 S.W.2d at 102. Under the first line of authority, "'dangerous condition' has a narrow meaning and refers to defects in the physical condition of a public entity's property." *Id*. For example, *Marston* cited *Kanagawa v. State ex rel. Freeman*, 685 S.W.2d 831 (Mo. banc 1985), in which an escaped inmate kidnapped, assaulted, and raped a woman. The woman sued the State alleging the fences surrounding the prison from which the inmate escaped were inadequate, the prison's gates were not properly locked or secured, and the security guard was physically incapable of stopping the inmate from escaping, thus creating a dangerous condition on the prison's property. *Kanagawa*, 685 S.W.2d at 833. *Kanagawa* applied *Twente v. Ellis Fischel State Cancer Hospital*, 665 S.W.2d 2, 11–12 (Mo. App. W.D. 1983), finding *Twente* correctly interpreted section 537.600.1(2)'s "dangerous condition" language to "refer to defects in the physical condition of the public entity's property" when *Twente* rejected a similar allegation from an employee who was assaulted and raped on a hospital's parking lot with inadequate security staff and notice of prior physical and sexual assaults. *Id*. at 835. *Twente* defined "dangerous condition" as to "describe, define, explain, denote, or reference only and exclusively the physical defects in, upon, and/or attending to the property of a public entity." *Twente*, 665 S.W.2d at 12. With that definition in mind, *Kanagawa* explained:

> It is readily apparent that the legislature, by including the various elements . . . conditioning the waiver of immunity, sought to narrowly delimit the scope of

6

§ 537.600(2). It would violate both this manifest legislative purpose and our policy of strictly construing provisions waving sovereign immunity to hold that "a dangerous condition" refers to a condition other than a defect in the physical condition of public property.

*Kanagawa*, 685 S.W.2d at 835. *Kanagawa* held the plaintiff's petition fell "short of averring a defect through either faulty construction or maintenance, in the condition of the prison's property" and determined the State was immune from suit under section 537.600. *Id.*

Under the second line of authority, *Marston* explained, "Missouri courts began relaxing the physical defect standard holding that the physical deficiency in a public entity's property could constitute a dangerous condition if the dangerous condition was created by positioning various objects on the property and not by intrinsic defects in the property." *Marston*, 921 S.W.2d at 102. *Marston* cited *Alexander v. State*, 756 S.W.2d 539 (Mo. banc 1988), in which an elevator repairman was injured when he descended a fixed metal ladder, stepped off the last rung and onto a folding room partition, which was laid at the foot of the ladder while he was working above in an equipment room. The repairman sued the State alleging the folding partition's placement at the foot of the ladder constituted a dangerous condition of the property. *Alexander*, 756 S.W.2d at 540–41. In holding the circuit court erred in entering judgment on the pleadings in the State's favor on sovereign immunity grounds, *Alexander* expanded the definition of "dangerous condition:"

> The term "property" in the context of § 537.600.1(2) has been interpreted as including both real and personal property, *Delmain v. Meramec Valley R–III School District*, 671 S.W.2d 415, 417 (Mo. App. 1984), and thus would encompass the ladder and partition involved here. While it has also been held that "dangerous condition" refers only to defects in the physical condition of public property; *Kanagawa*, 685 S.W.2d at 835; *Twente,* 665 S.W.2d at 11; we believe, giving the words of the statute their plain and ordinary meaning, that the alleged placement of the partition against the ladder created a physical deficiency in the [S]tate's property which constituted a "dangerous condition." *See Jones v. St. Louis Housing Authority*, 726 S.W.2d 766, 774 (Mo. App. 1987). The situation is no different in

7

> legal effect than had a rung of the ladder been attached in such a fashion as to have been insufficient to support plaintiff as he climbed from the upper room.

*Id*. at 541–42. *Alexander* explained, "the danger was created not by any intrinsic defect in the property involved, but by the dangerous condition created by the positioning of various items of property." *Id*. at 542. Hence, the condition in *Alexander* "was dangerous because its existence, without intervention by third parties, posed a physical threat to [the repairman]." *Id*.

Under the third line of authority, *Marston* cited cases holding "a dangerous condition may exist due to negligent, defective or dangerous design of public roads and highways, whose very existence poses a threat to a plaintiff." *Marston*, 921 S.W.2d at 103–04. *Marston* cited several cases, including *Johnson by Johnson v. City of Springfield*, 817 S.W.2d 611 (Mo. App. S.D. 1991), in which the plaintiff alleged an "unreasonably dangerous condition" existed on a city street where her child was struck by a motorist. The plaintiff alleged the high density of vehicles to pedestrians, parked cars blocking motorists' view of children and children's view of passing cars, many children playing in the area, motorists were not warned of children playing the area, and a safe speed not posted constituted a dangerous condition. *Johnson*, 817 S.W.2d at 612. *Johnson* discussed the progression of dangerous condition precedent in *Twente*, *Kanagawa*, and *Alexander*. *Id*. at 614–15. But ultimately, the Southern District affirmed the circuit court's judgment dismissing the plaintiff's petition for failing to plead facts the street suffered from a negligent, defective, or dangerous design when strictly construing statutory provisions waiving sovereign immunity and by distinguishing several cases addressing section 537.600.1(2)'s dangerous condition element as it applies to roadways. *Id*. at 614–15 (distinguishing *Wilkes v. Mo. Highway and Transp. Comm'n*, 762 S.W.2d 27 (Mo. banc 1988) (finding a dangerous condition when a bridge was situated so as to surprise approaching motorists); *Brown v. Mo. Highway and Transp. Comm'n*, 805 S.W.2d 274 (Mo. App. W.D. 1991) (finding the absence of guardrails and shoulders,

8

along with a steep vertical drop from the edge of the road, constituted a dangerous condition); *Cole v. Mo. Highway and Transp. Comm'n*, 770 S.W.2d 296 (Mo. App. W.D. 1989) (holding failure to warn motorists with proper highway signs and road markings of dangerous curves was sufficient to plead dangerous condition)).

Appellant's appeal does not contend MVC's property had physical defects constituting a dangerous condition. While Appellant's amended petition alleged the monitors placed upon Decedent's wheelchair or his person failed to work properly, Appellant's failure to raise or argue this point on appeal renders it waived. *Clayborn-Muldrow*, 640 S.W.3d at 497 (citing Rule 84.04(e)).[6] Nor does Appellant's claim involve the negligent, defective, or dangerous design of a highway or road.[7] Instead, Appellant's claim on appeal focuses solely on physical deficiencies on MVC's property regarding a *lack* of monitors or locks, which she alleges constitute a dangerous condition which caused Decedent's injuries and death.

Appellant relies heavily on *State v. Godfrey*, 883 S.W.2d 550 (Mo. App. E.D. 1994), to support her argument her amended petition adequately plead facts about the "nature of the claimed omissions/failures and thus the dangerous conditions of" MVC's property. Appellant believes *Godfrey* permits a plaintiff to plead "failures or omissions" as a dangerous condition or defect in the property. In *Godfrey*, a teenager ran away from a Missouri juvenile facility and was subsequently struck and killed by a car. *Id.* at 551. The teenager's parents brought a wrongful death action against the State, alleging the State "negligently permitted a dangerous condition to

---

[6] Appellant's counsel confirmed at oral argument the issue on appeal was whether the lack of monitors or coded locks constituted a dangerous condition.

[7] Because Appellant's claim does not involve the negligent, defective, or dangerous design of a highway or road, her reliance on cases addressing improper design and failure to warn in the context of roads or highways is misplaced. *See Kraus v. Hy Vee Inc.*, 147 S.W.3d 907, 915 (Mo. App. W.D. 2004) (failure to post adequate signing and traffic controls, along with confusing striping); *Huifang v. City of Kansas City*, 229 S.W.3d 68 (Mo. App. W.D. 2007) (failure to locate and install proper warning and traffic control devices); *Bruckerhoff v. City of Perryville*, 681 S.W.3d 303 (Mo. App. E.D. 2023) (lack of a crosswalk at an intersection).

exist at its juvenile facility" and averred "defects of faulty maintenance of screens, locks, and doors." *Id*. at 551–52. While this Court found this allegation was sufficient to allege a dangerous condition under section 537.600.1(2), this Court held when strictly construing the statute, the parents' petition failed "to establish the third element for waiver of sovereign immunity: 'that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred.'" *Id*. at 552. Specifically, the "petition fail[ed] to allege facts which show that it was the dangerous condition of the defective screens, locks, and fences which created a reasonably foreseeable risk of harm of [the teenager] being hit by a car." *Id*. at 553.

Appellant argues her amended petition goes beyond the general allegations in *Godfrey* regarding "faulty maintenance of screens, locks, and doors" because she "stated with specificity the nature of [MVC's] failure, the lack of monitoring, and why it was important to have such monitoring, to ensure the safety of an elderly man with mental and physical disabilities not leave the facility." In her brief, Appellant describes Decedent as "an elderly man with mental and physical disabilities" and "at an advanced age, with physical and mental impairments." The only information the amended petition provides about Decedent's age, physical disability, or mental impairment is he was "confined to a wheelchair" and MVC employees "had a duty to use the degree of reasonable care required by the known physical and mental condition of [Decedent]." The amended petition did not plead facts regarding Decedent's age or the nature of Decedent's physical or mental conditions which would require monitoring of his person or his wheelchair, or require him to be confined inside of the facility by way of coded locks. The amended petition did not allege Decedent required twenty-four-hour care or around-the-clock supervision. The amended petition stated Appellant "took [Decedent] to the C-Wing, which is the part of the facility

10

furthest from the outside door." The amended petition does not elaborate as to the significance of the C-Wing being furthest from the outside door or whether Decedent's room was in the C-Wing.

Even when giving these cursory allegations their broadest intendment that Decedent had physical and mental impairments placing MVC on notice he required a monitor on his person, his wheelchair, or to be housed in an area with coded locks to prevent him from leaving the facility, these allegations, in and of themselves, do not speak to whether a physical deficiency constituting a dangerous condition existed. We find Appellant's allegations akin to those brought in *Boever v. Special School District of Saint Louis County*, 296 S.W.3d 487 (Mo. App. E.D. 2009). In *Boever*, parents sued a school district and three employees for the wrongful death of their son, who suffered "severe functional limitations and medications that caused him to be a danger to himself and others." *Id*. at 490. The parents alleged the school district and its employees had "actual or constructive notice that the child required constant supervision, could fatally injure himself or choke to death, and 'could not be left unsupervised with food or inedible objects in or near his reach'" because if left in that position, it "would pose an immediate danger to his health, safety, wellbeing and life." *Id*. The child ate food left within his reach while unsupervised, experienced a choking incident, and died. *Id*. at 490–91. The parents' petition alleged "the state and condition of the classroom was dangerous, as its purpose was to serve students with physical, mental and sensory disabilities such as [the child's], and open and unattended food was left on its premises without adequate warnings, barriers or preventative measures in place." *Id*. at 490. The school district moved to dismiss the petition based on sovereign immunity, which the circuit court sustained. *Id*. This Court affirmed the circuit court's judgment, finding the parents' allegations "allege only a lack of supervision and a lack of warnings, barriers, and similar preventive

measures" which did "not constitute a dangerous condition within the meaning of section 537.600.1(2)." *Id.* at 494.

Here, as in *Boever*, the amended petition merely recites MVC lacked barriers or preventive measures to prohibit Decedent from leaving the facility by failing to place a monitor on Decedent or his wheelchair or failing to equip the facility with coded locks. These allegations are insufficient under *Boever* to constitute a dangerous condition to waive MVC's sovereign immunity. *See also*, *Necker by Necker v. City of Bridgeton*, 938 S.W.2d 651, 655 (Mo. App. E.D. 1997) (stating, "[i]ntangible acts such as inadequate supervision, the lack of warnings and/or signs, the inability to secure an area and the lack of barricades do not create a dangerous condition."). Further, this Court finds *Godfrey* distinguishable because the parents' allegations there concerned "defects of faulty maintenance of screens, locks, and doors" which goes to the heart of a physical defect of the property as opposed to the lack of barriers or preventive measures alleged here and in *Boever*. Hence, this Court does not read *Godfrey* to include "failures and omissions" as Appellant contends on appeal.

Finally, this Court notes Appellant did not seek to further amend her petition. "A court may assume a party has offered the strongest presentation of his or her case that the facts permit when the party fails to amend or seek leave to amend a pleading." *Black v. Rite Mortg. & Fin., Inc.*, 239 S.W.3d 165, 168 (Mo. App. E.D. 2007). *Johnson* recognized although appellate courts apply a liberal standard of review when reviewing Appellant's pleadings, this Court also must strictly construe provisions waiving sovereign immunity under *Alexander*. *Johnson*, 817 S.W.2d at 615. As in *Johnson*, this Court finds *Twente* aptly stated:

> What appellant seeks is to engraft upon the term "dangerous condition" any and all conditions or events which, if foreseeable, cause or produce injury arising out of or in conjunction with the property or employees of a public entity. If appellant's

argument were carried to its logical conclusion, § 537.600(2) [now § 537.600.1(2)] would become a nullity.

*Id*. (quoting *Twente*, 665 S.W.2d at 12).  Accordingly, Appellant failed to state a claim regarding a dangerous condition on MVC's property due to lack of locks and monitors, and, as such, has failed to show MVC waived its sovereign immunity under section 537.600.1(2).  Point I is denied.

## Conclusion

The circuit court's judgment is affirmed.

_____
Philip M. Hess, Presiding Judge

Gary M. Gaertner, Jr., J. and
Renée Hardin-Tammons, J. concur.

13